[Civil No. 4358. Filed June 30, 1941.]

[114 Pac. (2d) 888.]

JOHN A. DUNCAN, as Superintendent of the Department of Liquor Licenses and Control of the State of Arizona, Appellant, v. A. R. KRULL COMPANY, Appellee.

Mr. Joe Conway, Attorney General, and Mr. Edward P. Cline, Assistant Attorney General, for Appellant.

Mr. Riney B. Salmon and Mr. J. A. Riggins, Jr., for Appellee.

ROSS, J.—The Superintendent of the Department of Liquor Licenses and Control for the State, on June 26, 1939, promulgated "Regulation No. 36" reading as follows:

"On and after September 1, 1939, no wholesaler or retailer shall sell or otherwise dispose of any beer in the original container, including bottle and can, having a capacity of less than eleven (11) fluid ounces."

On June 29, 1940, the A. R. Krull Company, an Arizona corporation, engaged in selling and distributing beer and other liquors at wholesale throughout Arizona, brought this action against John A. Duncan, as superintendent of such department, to secure a declaratory judgment as to whether the superintendent is, by the provisions of the law creating the Department of Liquor Licenses and Control (sections 72-101 to 72-117, Arizona Code 1939), given the right and power to issue such regulation fixing the minimum fluid content of containers of beer.

Issues were formed and, motion for judgment on the pleadings having been made by plaintiff, the court declared its judgment to be that the superintendent, in promulgating such regulation, exceeded his powers.

From such judgment, the superintendent has appealed.

It appears from the complaint that plaintiff has in stock beer, in containers of eight ounces, which it desires to sell and distribute to the trade but refrains from so doing so long as the legality of the foregoing regulation remains undetermined.

The pertinent provisions of the law are to be found in the following sections:

"72–103. *Powers and duties of superintendent.*— (a) The superintendent of liquor licenses and control shall administer and enforce the provisions of this act.

"(b) The superintendent shall have power:

"1. To prescribe necessary rules and regulations: 1a. for carrying out the provisions of this act; 1b. for the proper conduct of the business to be carried on under each specific type of spirituous liquor license; 1c. to enable and assist state officials to collect all taxes levied or imposed in connection with spirituous

liquors, and, 1d. to procure full compliance by licensees, in conduct of their business, with all laws; . . . "

"72–113. *Unlawful acts.*

. . . . . . . . . . . . .

"(b) It shall be unlawful:

. . . . . . . . . . . .

"2. For any off-sale retailer to sell spirituous liquors except in the original container, to permit any spirituous liquor to be consumed on his premises, or to sell spirituous liquor in any container having a capacity of less than eight (8) ounces. . . . "

The Attorney General contends the terms of the act confer on the superintendent the power to fix the minimum contents of liquor containers. The question for decision is whether this contention is correct. Under the act, beer is classified as a "spirituous liquor." Section 72–101. The act does not specifically provide the size of liquor containers but under section 72–113 (b) 2, *supra,* off-sale liquor retailers commit an unlawful act if they sell spirituous liquors (1) except in original containers or (2) in containers of a capacity less than *eight* ounces or (3) if they permit the liquor to be consumed on the sellers' premises. It nowhere fixes the capacity of containers for the wholesaler. But, since no sales of liquor in containers of less than eight ounces would be legal, the wholesaler of necessity would put his product in containers of a capacity of eight ounces or more. The practical effect of limiting the minimum size of containers to eight ounces by the off-sale retailer was to fix the wholesale size of containers at eight ounces or more.

Under the act, whether it be whiskey, brandy, rum, gin, wine, ale, beer, or any of the liquors mentioned, containers for liquor sold in original form must be of a capacity of not less than eight ounces to be lawful. That is the declaration of the lawmaking body, a legislative policy, and the question is, did the body announcing such a policy, by delegating to the superin-

tendent the power to prescribe necessary rules and regulations for carrying out the provisions of the act, intend to authorize such administrative officer to fix the size of containers of beer at not less than eleven fluid ounces.

 Rules and regulations by an administrative or executive officer or body are always subordinate to the terms of the statute and in aid of the enforcement of its provisions. If containers of less capacity than eight ounces are forbidden, it follows, we think, that it was the intention of the legislature that containers of the size of eight ounces or more are lawful. .

"The general principle governing the conditions under which the power to make rules and regulations may be delegated has been stated as follows: A legislature, in enacting a law complete in itself and designed to accomplish the regulation of particular matters falling within its jurisdiction, may expressly authorize an administrative commission, within definite valid limits, to provide rules and regulations for the complete operation and enforcement of the law within its expressed general purpose. So long as a policy is laid down and a standard is established by a statute, no unconstitutional delegation of legislative power is involved in leaving to selected instrumentalities both the making of subordinate rules within prescribed limits and the determination of facts to which the policy as declared by the legislature is to apply. . . . " 11 Am. Jur. 955, sec. 240.

 Before the superintendent could make a regulation such as No. 36 it should appear that such regulation has for its purpose the carrying into effect of some provision of the act. The size of the liquor container is not a subject committed by the act to the superintendent. The provisions of the act are, in general, as follows:

Section 72–101 consists of definitions; 72–102 creates the department of liquor licenses and control and provides for the office of superintendent of such de-

partment; 72–103, which we have heretofore quoted in part, prescribes the powers of such superintendent; 72–104 provides that anyone who deals in spirituous liquors shall procure a license to do so from the superintendent, with exceptions such as drug stores filling prescriptions, etc.; 72–105 provides that any person desiring to manufacture, sell, or deal in spirituous liquors shall apply to the superintendent for a license and prescribes quite definitely the terms upon which the license may issue; 72–106 provides that every spirituous liquor licensee shall be a qualified elector; that no license shall be issued. to any person who within one year has violated a liquor law, or who within two years has been convicted of a felony; 72–107 allocates the licenses issuable according to population; 72–108 makes the superintendent the judge of the applicant's qualifications and the public convenience the licensee will serve; provides for the transfer of the license upon the payment of $25, the transferee to have the same qualifications as the original licensee; 72–109 provides for the suspension or revocation of a license, after hearing, for violation of "1. any provision of this act or of law; 2. any rule or regulation issued pursuant to this act, or 3. any condition of the license"; 72–110 fixes the annual fees for licenses; 72–111 provides for the collection and disposition by the superintendent of such fees; 72–112 authorizes incorporated cities and towns to regulate the manufacture, sale and disposal of spirituous liquors; 72–113 defines "unlawful acts," one of which we have heretofore set out.

Wherein, we might inquire, is the regulation fixing the minimum contents of a container to aid in the enforcement of any of the above provisions of the act?

In *State* v. *Miles,* 5 Wash. (2d) 322, 105 Pac. (2d) 51, 52, an information had been filed charging defendant with "the crime of offering a reward for display

of a game animal, . . . to-wit: a deer." The alleged illegality of defendant's act was based on a regulation promulgated by the state game commission providing that it should "be unlawful to offer, pay or receive any reward . . . for the hunting . . . or *displaying* of any game animal, game bird or game fish. . . . " The regulation was adopted by the commission under rule-making power granted to it by statute (Rem. Rev. Stat. (Sup.), sec. 5855–6), which, so far as pertinent, reads:

"The state game commission shall have the power and it shall be its duty from time to time to adopt, promulgate, amend and/or repeal, and enforce reasonable rules and regulations governing and/or prohibiting the *taking* of the various classes of game. . . . " (Italics supplied.)

The question was whether the power to promulgate rules against the *taking* of game included the power to prohibit the *displaying* of game. The court held the information stated no offense and said:

"In exercising the rule-making power, however, such administrative officers and boards must act within the limits of the power granted to them. *Seattle High School Chapter No. 200* v. *Sharples,* 159 Wash. 424, 293 Pac. 994, 72 A. L. R. 1215; *Campbell* v. *Galeno Chemical Co.,* 281 U. S. 599, 50 Sup. Ct. 412, 74 L. Ed. 1063; *Doran* v. *Colonial Drug & Sales Co.,* 10 Cir., 58 Fed. (2d) 65; *Fisher* v. *J. H. Sheridan Co.,* 182 S. C. 316, 189 S. E. 356, 108 A. L. R. 981; 11 Am. Jur. 959, § 240. The basis for that proposition is, of course, that rules and regulations which have the effect of extending, or which conflict in any manner with, the authority-granting statute do not represent a valid exercise of authorized power, but, on the contrary, constitute an attempt by the administrative body to legislate. *Anheuser-Busch, Inc.,* v. *Walton,* 135 Me. 57, 190 Atl. 297."

In *Adolph Coors Co.* v. *Liquor Control Commission,* 99 Utah 246, 105 Pac. (2d) 181, 182, under the rule-

making power, the commission undertook by regulation to fix the sizes of containers for beer at 11, 12, 22, 24, 32 and 64 ounces. The Liquor Control Act (Laws of 1935, Chapter 43, section 96) provides: "It shall be unlawful for any person to . . . sell . . . bottled beer in containers of a capacity of more than sixty-four fluid ounces. . . . " This section, contrary to ours, fixes the maximum size of containers at 64 fluid ounces while ours fixes the minimum at eight ounces. The court said:

"The field of regulation as to volume of each container is fixed by the quoted part of section 96—all sizes of containers up to and including 64 fluid ounces are lawful sizes. The legislature has not said that the Commission may determine what sizes shall be lawful and what sizes unlawful. The legislature has said the Commission may regulate the sale of beer which the legislature has authorized to be sold; it has not said that the Commission may prohibit that which the legislature has authorized to be done. This might be illustrated by an assumed case of an attempt upon the part of the Commission to say that a sale of beer in 64 ounce containers is prohibited. There we would have a direct conflict between the legislative enactment and the Commission's regulation. If the Commission cannot say that a 64 ounce container shall be prohibited, it cannot say an 8 ounce container shall be prohibited."

In the Coors case, as in the present case, the plaintiff desired to sell its beer in eight ounce containers. The court held the regulation issued by the Utah liquor commission, fixing the contents of containers as above stated, was in excess of the commission's powers and prohibited the enforcement of the regulation. The ruling is exactly in point, the only difference being that there the commission undertook to fix the capacity of containers at less than the legislature had provided and here the superintendent undertakes to fix the contents at more than the legislature indicates or

provides, and to make the use of containers of less capacity than he fixes, to wit, 11 fluid ounces, unlawful. If this is permitted, then the superintendent's regulation is superior to the law and not subordinate to it.

An analysis of the whole act discloses no provision therein that the regulation will assist in carrying out, nor, as we see it, will it aid in the proper conduct of the wholesaler's or the off-sale retailer's business, or assist the state officers in collecting taxes or in procuring compliance with the law by licensees. Section 72–103 (b) 1, 1a, 1b, 1c and 1d, *supra*.

The judgment of the lower court should be and is affirmed.

LOCKWOOD, C. J., and McALISTER, J., concur.