772 P.2d 33

**U.S. PARKING SYSTEMS, an Arizona corporation, Plaintiff/Appellant,**

v.

**CITY OF PHOENIX, a municipal corporation; Board of Adjustment of the City of Phoenix, a quasi-judicial body created by City of Phoenix; Judi Butterworth; Francis Anderson; Richard Alvord; Gloria Aguilar; George H. Foster, Jr.; James Speedie and John Doe, Defendants/Appellees.**

No. 2 CA–CV 89–0016.

Court of Appeals of Arizona, Division 2, Department A.

April 4, 1989.

Beus, Gilbert, Wake & Morrill by Glenn B. Jenks, Phoenix, for plaintiff/appellant.

Roderick G. McDougall, City Atty. by Edward P. Reeder, Phoenix, for defendants/appellees.

OPINION

HATHAWAY, Judge.

This appeal is taken from the trial court's granting of a motion for summary judgment in favor of the City of Phoenix in a case involving the applicability of the city's zoning ordinance regarding landscaping of self-park parking lots.

Appellant is the owner of several parking lots in Phoenix. The lots are located in commercially-zoned districts and are virtually identical. They are paved, contain no buildings or other structures and are self-park lots. The patrons pay for their park-

ing by depositing money in a paybox located near the entrance to the lots.

Phoenix has cited appellant for failing to landscape the lots, citing § 512 of the Phoenix City Zoning Ordinance. Section 512 is titled "Commercial and High–Rise Building Setbacks." It regulates the requirements for setbacks, including landscaping, for properties that either contain high-rise buildings or are located within commercially-zoned districts.

Appellant contested the validity of the zoning citations before the zoning administrator of the city board of adjustment on the grounds that § 512 did not apply to the parking lots. The administrator and the board rejected appellant's position. The superior court ruled in favor of Phoenix, granted its motion for summary judgment and denied appellant's similar motion.

On appeal, appellant argues that the landscaping requirements of § 512 do not apply to the parking lots. We agree and reverse.

The issue, statutory interpretation, is one of law and we are free to draw our own legal conclusions and are not limited to the review standard of arbitrary, capricious or abuse of discretion. *Arizona State Board of Accountancy v. Keebler,* 115 Ariz. 239, 241, 564 P.2d 928, 930 (App.1977).

The relevant portions of § 512 are as follows:

Sec. 512. COMMERCIAL AND HIGH–RISE BUILDING SETBACKS; PURPOSE.

\* \* \* \* \* \*

A. APPLICABILITY

1. The provisions of this section are applicable ... to any *use or structure* ... located within C–1, C–2, or C–3 districts....

\* \* \* \* \* \*

B. APPLICABILITY TO HIGH–RISE BUILDINGS.

C. APPLICABILITY TO COMMERCIAL AND INDUSTRIAL USE DISTRICTS.

All *structures* located in C–1, C–2, or C–3 districts ... shall conform to the following standards:

1. A *front yard* of not less than twenty-five (25) feet in depth shall be provided.

a. Where any parking space is established between the front property line and the *principal building or structure,* landscaping is required as follows:

\* \* \* \* \* \*

D. GENERAL REQUIREMENTS.

All *structures* ... located in the C–1, C–2, or C–3 districts ... shall ... be subject to the following general provisions: ... (Emphasis Added).

The definitional section of the ordinance contains the following definition of a yard:

YARD: A space on any lot unoccupied by a structure ... measured as the minimum horizontal distance from a *building or structure* ... to the property line ... or to the street right-of-way or easement in the front yard.... (Emphasis added).

We begin our examination of § 512 by noting certain principles of statutory construction and interpretation. Judicial deference should be given to agencies charged with the responsibility of carrying out specific legislation, *Blake v. City of Phoenix,* 157 Ariz. 93, 754 P.2d 1368 (App.1988), and ordinarily an agency's interpretation of a statute or regulation it implements is given great weight. *Fagner v. Heckler,* 779 F.2d 541 (9th Cir.1985); *Marlar v. State,* 136 Ariz. 404, 666 P.2d 504 (App.1983). However, the agency's interpretation is not infallible, and courts must remain the final authority on critical questions of statutory construction. *Fagner* and *Marlar, supra.*

■ Where a term is used in one provision of a statute and omitted from another, that term should not be read into the section where it is omitted. *Dunlop v. First Nat'l Bank of Arizona,* 399 F.Supp. 855 (D.C.Az.1975). An unambiguous statute should be interpreted to mean what it plainly states unless an absurdity results. *Holding v. Industrial Comm'n of Arizona,* 139 Ariz. 548, 679 P.2d 571 (App. 1984). While it is true that title headings

in statutes are not part of the law, A.R.S. § 1–212, we can nevertheless refer to titles and captions for indications of legislative intent. *State v. Superior Court*, 128 Ariz. 535, 627 P.2d 686 (1981). When a statute sets forth the things on which it will operate, it will be construed to exclude from its effect those not expressly mentioned. *Roller Village, Inc. v. Superior Court*, 154 Ariz. 195, 741 P.2d 328 (App.1987). Unless otherwise defined, words in a statute will be interpreted as taking their ordinary common meaning. *Fagner*, supra; *Harrelson v. Industrial Comm'n of Arizona*, 144 Ariz. 369, 697 P.2d 1119 (App.1984).

Citing *Minor v. Cochise County*, 125 Ariz. 170, 608 P.2d 309 (1980), appellees argue that the interpretation of a zoning ordinance is properly a function of the board of adjustment. We agree, but, as previously noted, where it clearly appears that the board's position is wrong, we need not defer to the board. Particularly is this so where there is no showing of a longstanding interpretation by the agency. *Kubby v. Hammond*, 68 Ariz. 17, 198 P.2d 134 (1948), cited by appellees is distinguishable. The question there involved the meaning of the word "industrial" and whether as used in an ordinance it included the business in question. The court noted that the officers of the City of Phoenix charged with construing the ordinance in question had for 17 years held that the business in question was permitted in the zoning district in question. There is nothing in the instant record, nor is any claim made, that the board has over a period of years applied § 512 to self-park parking lots. The title of § 512 is "Commercial and High–Rise Building Setbacks." "Setbacks" is not defined in the ordinance. Its common meaning is:

> A distance from a curb, property line or structure within which building is prohibited ... Provision in zoning ordinance regulating the distance from the lot line to the point where improvements may be constructed.

Black's Law Dictionary 1230 (5th ed. 1979). We can infer from the title that the purpose of the ordinance is to regulate the location of a building on a lot in relation to the property lines of that lot. *State v. Superior Court*, supra.

Section 512(B) deals with high-rise buildings and is not relevant here. Section 512(C) deals with property located within commercial and industrial use districts which includes the parking lots in question. The section clearly states, however, that it only applies to "all structures." Appellees argued below and on appeal that the operation of the parking lots is a "use;" therefore, the statement of applicability in § 512(A) that the provisions of the section apply to any "use or structure" make the provisions of § 512(C) applicable to the parking lots. We do not agree. As noted above, when a term is used in one section of a statute but not in another, the missing term should not be read into the latter section. *Dunlop*, supra. The word "use" should not be read into § 512(C) in order to expand the ambit of that section. Id. Section 512(D), dealing with general requirements, also states that it applies to "all structures." The Phoenix City Council specified "structures" and nothing else in §§ 512(C) and (D). Similarly, it specified buildings over a certain height or number of stories and nothing else in § 512(B). The specificity of §§ 512(C) and (D) conflicts with the general statement in § 512(A) regarding "use or structure." In such a situation, the specific controls. *Pima County v. Heinfeld*, 134 Ariz. 133, 654 P.2d 281 (1982).

We find §§ 512(C) and (D) to be clear and unambiguous. The provisions of those sections apply only to structures. This interpretation is reinforced by the use in § 512(C) of the term "front yard." By definition, a front yard is the area between the street right-of-way and the building or structure located on the lot. The parking lots have no buildings or structures, therefore there are no "front yards" within which landscaping can be placed. We believe our reading of the ordinance is further supported by its stated purpose in § 512 "to assure adequate light, air and open space; to preserve a healthful environment, and to maintain and enhance values for commercial property in the City."

We believe that purpose is not threatened until structures are placed on the property.

When a statute is unambiguous, it is given its plain meaning unless an absurdity would result. *Holding,* supra. To interpret the ordinance as appellees wish would result in just such an absurdity. Appellant would be told that § 512 makes the ordinance applicable to its commercially-zoned property. But when appellant looked at §§ 512(C) and (D) to determine how to comply, it would discover that there can be no compliance because the operative parts of § 512 don't apply to property without structures. Appellant would be in the position of having to comply but without guidance as to what compliance action was required. This would result in decisions at the whim of zoning officials as to what action avoids violation of the ordinance. Given the language of the ordinance, it does not apply to appellant's parking lots.

Appellant requests that we issue an order in the form of mandamus to the board of adjustment to reverse its construction of § 512 and to rescind the citations issued to it for zoning violations. We view this as an attempt by appellant to "boot-strap" itself into a position to receive attorney's fees under A.R.S. § 12–2030. This is not a mandamus action. A.R.S. § 12–2021 states "a writ of mandamus may be issued ... to compel ... performance of an act which the law specially imposes as a duty...." We are not dealing with the failure of an official to perform a ministerial act. Our ruling that the board of adjustment and the superior court exceeded their jurisdiction in interpreting the ordinance is in the nature of certiorari under A.R.S. § 12–2001.

As A.R.S. § 12–2030 provides for attorney's fees only in mandamus actions, the request is denied.

Reversed.

LIVERMORE, P.J., and HOWARD, J., concur.