207 P.3d 741

**Bridget SHARPE, Plaintiff–Appellant,**

v.

**ARIZONA HEALTH CARE COST CONTAINMENT SYSTEM, a state agency; Anthony D. Rodgers, Director of the Arizona Health Care Cost Containment System, in his official capacity; and Mercy Care Plan, Defendants–Appellees.**

**No. 1 CA–CV 07–0817.**

Court of Appeals of Arizona, Division 1, Department A.

Feb. 3, 2009.

Review Granted June 1, 2009.

Arizona Center for Disability Law By Jennifer L. Nye, Tucson, Attorneys for Plaintiff–Appellant.

Johnston Law Offices PLC By Logan T. Johnston III, Phoenix, Attorneys for Defendants–Appellees, AHCCCS and Anthony D. Rogers.

Campbell, Yost, Clare & Norell PC By Kari B. Zangerle, Mercy Care Plan by Ifshan K. Hayat, Phoenix, Co–Counsel for Defendant–Appellee, Mercy Care.

Arizona Dental Association By Erin Raden, Scottsdale, Attorney for Amicus Curiae, American Dental Association and Arizona Dental Association.

Fleming & Curti PLC By Leigh H. Bernstein, Tucson, Attorneys for Amicus Curiae, AARP.

## OPINION

BARKER, Judge.

¶ 1 The essential question in this case is whether regulations and a policy adopted by the Arizona Health Care Cost Containment System ("AHCCCS") thwart the legislature's determination to provide dentures when "medically necessary" to those who qualify for AHCCCS coverage. Determining that the AHCCCS policy and regulations do just that, we reverse the superior court's decision affirming the denial of Plaintiff–Appellant Bridget Sharpe's ("Sharpe") request for full upper and lower dentures.

I.

¶ 2 Sharpe is AHCCCS eligible and enrolled with the Mercy Care Plan ("Mercy Care") to receive services. Due to rampant decay of her teeth, Sharpe's physicians and dentist requested that Mercy Care approve the removal of all Sharpe's teeth and the fabrication of full upper and lower dentures. Mercy Care approved the extraction of all Sharpe's teeth but denied her request for dentures on the basis that "[t]he information reviewed does not show a medical need for the request." The clear impact of Mercy Care's rejection is that in order to qualify for dentures, there must be a medical need, beyond the inability to chew, that occurs when one loses all her teeth. After Mercy Care rejected Sharpe's initial appeal, she request-

ed a hearing, which was held by Administrative Law Judge ("ALJ") Dorinda M. Lang.

¶ 3 At the hearing, Sharpe attempted to address Mercy Care's requirement that there be a medical need beyond the inability to chew. She did this by presenting evidence that she needed to have roughage in her diet to assist in weight loss necessary to deal with her fibromyalgia. She provided documentation from her nutritionist, asserting that she "need[ed][a] dental referral for assistance in chewing foods" to "aid in weight loss that is medically necessary to aid in pain control." She provided documentation from her primary care physician, noting that she had "rampant caries [decay]" and that "almost all remaining teeth are nonrestorable" and recommending "full mouth extractions with immediate full upper and lower dentures." She provided documentation from another physician, who reiterated that dentures would be "very beneficial" given Sharpe's "very poor dental hygiene and extremely bad dentition and caries teeth." She also submitted a claim form from her dentist requesting dentures for her.

¶ 4 Mercy Care's dental director, Dr. Robert Thielen, rebutted this evidence by opining that dentures were not medically necessary for Sharpe because she could meet her health needs through a liquid diet and because there are no life-threatening adverse health effects related to edentulism (not having any teeth). Dr. Thielen's answers assume, as one would suspect, that there would be an inability to chew, but this did not result in medical necessity:

Q.: And are humans able to sustain themselves on an all liquid diet, to your knowledge?

Dr. Thielen: Yes. And I just want to say, I also reviewed this [with] one of the medical directors, who has also given input that a liquid diet would be sufficient in this case.

Thus, because Sharpe could receive adequate nutrition on a liquid diet, there was no need for dentures.

¶ 5 The ALJ rejected Mercy Care's position that there must be some separate medical need for the dentures apart from the restoration of function due to the loss of all teeth. Referencing the pertinent statutes and AHCCCS regulations, the ALJ held:

There is no indication in the AHCCCS statutes that the legislature intended for the term "medical necessity" to be defined differently for dentures than it is defined for all other services. *Teeth provide a function to the human body that enables people to eat normally. Dentures prevent the disability and adverse health condition of not being able to eat normally in edentulous patients. They restore a normal bodily function.* Without them, the patient's function, and therefore her health, is impaired. This meets the definition of medical necessity as set forth by A.A.C. R9–22–101(B).

(Emphasis added.) Without specifically referencing contrary AHCCCS regulations and policies, the ALJ held that "[i]t is well established law that wherever statutory authority conflicts with agency rule-making, the rule must yield to the statute."

¶ 6 The AHCCCS director adopted portions of the ALJ's findings of fact, but rejected the ALJ's conclusion that the dentures were medically necessary. In part, the director held:

There has been no medical evidence showing that Complainant cannot obtain sufficient nutrition by eating a diet of soft food or by grinding and/or pureeing her food, or that Complainant would be unable to lose weight with such a diet or that such a diet could not have equivalent roughage and fiber to help with her constipation. *The ability to chew and masticate is not, in and of itself, a basic medical necessity and is not a disability. Babies, for example, are not disabled or unable to obtain adequate nutrition because they are born without teeth. The evidence does not show that Complainant has any nutritional deficit. Absent such a deficit, or other problems not present here, the ability to chew is not a disability or adverse health condition. Complainant is simply requesting dentures for convenience,* not for any documented medical reasons. This being the case, the provision of dentures is not medically necessary.

(Emphasis added.) In short, the director adopted Mercy Care's position that because adequate nutrition could be obtained without chewing food, dentures were not medically necessary. The director required some medical need other than the inability to chew for Sharpe to receive dentures.

¶ 7 Although the specific AHCCCS regulation, Arizona Administrative Code ("A.A.C.") R9–22–201, and policy, Medical Policy 310, pertaining to dentures were not referenced in the director's decision, the director's decision was consistent with that regulation and policy. Medical Policy 310 provides that "[n]either the inability to properly masticate [chew] nor cosmetic considerations, alone or in combination, constitute medical necessity for dentures." The director's decision, though not referencing Medical Policy 310, applied that policy to the definition of medical necessity.

¶ 8 Sharpe next filed a complaint in the superior court seeking judicial review of the director's decision. The superior court affirmed the director's decision, and Sharpe timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101(B) (2003).

## II.

■■■■ ¶ 9 "On appeal from the superior court's review of an administrative decision, we consider whether the *agency action* was supported by the law and substantial evidence and whether it was arbitrary, capricious or an abuse of discretion." *Callen v. Rogers,* 216 Ariz. 499, 502, ¶ 9, 168 P.3d 907, 910 (App.2007) (emphasis added). Thus, we focus our attention on the director's decision, rather than that of the superior court. In reviewing factual determinations, we will not set aside a decision as arbitrary and capricious if it is supported by any substantial evidence. *Id.* Subject to the more detailed considerations set forth below, *infra* ¶ 18, we review an agency's application and interpretation of the law de novo. *Ariz. Health Care Cost Containment Sys. Admin. v. Carondelet Health Sys.,* 188 Ariz. 266, 269, 935 P.2d 844, 847 (App.1996). Sharpe argues on appeal that the AHCCCS standard for coverage of dentures is contrary to what the legislature

has mandated in that it unlawfully requires a medical condition other than the inability to properly or normally chew food. For the reasons that follow, we agree.

## III.

¶ 10 To determine whether A.A.C. R9–22–201, Medical Policy 310, and the application of those standards in defining medical necessity unlawfully restrict coverage provided by the legislature, it is first necessary to consider what the legislature provided and how, if at all, the pertinent regulations and policy differ.

¶ 11 We construe statutes to give meaning to each word and phrase, leaving none a nullity. *Pinal Vista Props., L.L.C. v. Turnbull,* 208 Ariz. 188, 190, ¶ 10, 91 P.3d 1031, 1033 (App.2004) ("[E]ach word or phrase of a statute must be given meaning so that no part is rendered void, superfluous, contradictory or insignificant."). We avoid constructions that result in any one portion of a statute being rendered meaningless. *Mejak v. Granville,* 212 Ariz. 555, 557, ¶ 9, 136 P.3d 874, 876 (2006) ("We must interpret the statute so that no provision is rendered meaningless, insignificant, or void."). We also consider a statute in conjunction with related statutory provisions. *Johnson v. Mohave County,* 206 Ariz. 330, 333, ¶ 11, 78 P.3d 1051, 1054 (App.2003) ("[A] statute should be construed in conjunction with other statutes that relate to the same subject or purpose, giving effect to all statutes involved.").

■■■ ¶ 12 The specific statute at issue here is A.R.S. § 36–2907(A)(6), part of Arizona's Medicaid program, AHCCCS. That provision states:

A. Unless modified pursuant to this section, contractors shall provide the following *medically necessary* health and medical services:

. . . .

6. Medical supplies, equipment and prosthetic devices, not including hearing aids, ordered by a physician or primary care practitioner *or dentures ordered by a dentist licensed pursuant to title 32, chapter 11.*

A.R.S. § 36–2907(A)(6) (Supp.2007) (emphasis added). Thus, under the statute, there are two prongs that must be met in order for Sharpe to receive dentures. First, they must be "ordered by a dentist." *Id.* Second, they must be "medically necessary." *Id.* The legislature did not provide a definition of "medically necessary."

¶ 13 Additionally, the legislature provided rule-making authority to the director as follows:

> The director shall adopt rules necessary to limit, to the extent possible, the scope, duration and amount of services, including maximum limitations for inpatient services that are consistent with federal regulations under title XIX of the social security act. [42 U.S.C. § 1396].

A.R.S. § 36–2907(D); *see also* A.R.S. § 36–2903.01(E) ("The director shall adopt rules that further specify the medical care and hospital services that are covered by the system pursuant to § 36–2907."). Finally, and importantly, we note that the entire provision of dentures by the legislature is optional and not required under federal law. *See* 42 C.F.R. §§ 440.225, 440.100 and 440.120. Thus, a plain language reading of the statute shows the legislature has exercised its option to provide dentures based on the two elements specified and expressly provided for rule-making by the director.

¶ 14 As to the pertinent AHCCCS rules and policies, the director adopted the following regulation defining "medically necessary" for purposes of implementing this statute:

> "[M]edically necessary" means a covered service [ ] provided by a physician *or other licensed practitioner* of the healing arts

within the scope of practice under state law to prevent disease, *disability,* or *other adverse health conditions* or their progression, or to prolong life.

A.A.C. R9–22–101(B) (emphasis added). Of importance, we note that the regulatory definition of "medically necessary" provides that the determination may be made by a physician *or* "other licensed practitioner of the healing arts within the scope of practice." *Id.* This is consistent with A.R.S. § 36–2907(A)(6) which, again using the disjunctive, provides for "prosthetic devices . . . ordered by a physician *or* a primary care practitioner *or* dentures ordered by a dentist." A.R.S. § 36–2907(A)(6) (emphasis added). Under both the statute and the regulatory definition of "medically necessary," a physician's opinion is not required to receive dentures under § 36–2907(A)(6). Additionally, the regulatory definition of medical necessity includes the prevention of "disability[ ] or other adverse health conditions." A.A.C. R9–22–101(B). Neither of those two terms are further defined in the regulatory section containing definitions.

¶ 15 AHCCCS also adopted a regulation to define "dentures" and "denture services" to mean

> a partial or complete set of artificial teeth and related services that are determined to be medically necessary *and* the primary treatment of choice, or an essential part of an overall treatment plan, *and* designed to alleviate a medical condition *as determined by the primary care provider* in consultation with the dental service provider.

A.A.C. R9–22–201 (emphasis added).[1] This regulation, at a minimum, adds at least one

---

1. A.A.C. R9–22–201 defines other terms not at issue here. AHCCCS also adopted A.A.C. R9–22–207, "Dental Services," which provides as follows with regard to dentures:

    C. Covered denture services are medically necessary dental services and procedures associated with, and including the provision of dentures.

    D. The following limitations apply to dentures:

      1. Provision of dentures for cosmetic purposes is not a covered service;

      2. Extractions of asymptomatic teeth are not covered unless their removal is the most cost-effective dental procedure for the provision of dentures; and

      3. Radiographs are covered only if used as a diagnostic tool preceding treatment of symptomatic teeth and to support the need for, and provision of, dentures.

    . . . .

    F. Prior authorization of dental services for a FFS member is required from the Administration for the following:

      1. Provision of medically necessary dentures;

      2. Replacement, repair, or adjustment to dentures[.]

To the extent that A.A.C. R9–22–207 is used to implement Medical Policy 310 it suffers from the same limitations as the definition of "dentures" and "denture services" set forth in R9–22–201.

additional requirement to the definition of "medically necessary": that the dentures must "alleviate a medical condition *as determined by the primary care provider.*" It does not permit a finding of a "medical condition" by "other licensed practitioner[s] of the healing arts within the scope of practice," as R9–22–101(B) provides. Thus, it excludes dentists. *See* A.A.C. R9–22–101(B) (defining "primary care provider" by reference to the definitions of "primary care physician" and "primary care practitioner" found in A.R.S. § 36–2901(12) and (13)).

¶ 16 "Medical condition," as specified in the definition of "dentures" in A.A.C. R9–22–201, is not defined by regulation. However, AHCCCS also developed Medical Policy 310. This Medical Policy makes it clear that the necessary "medical condition" must be something other than the inability to chew. In pertinent part it states:

> AHCCCS covers partial or complete dentures, and related services when determined to be medically necessary by the primary care provider (PCP) in conjunction with the member's attending dentist, to alleviate the member's health problem. The PCP and attending dentist must provide documentation which clearly shows that dentures are medically necessary for the ongoing and continued health of the member. *Neither the inability to properly masticate nor cosmetic considerations, alone or in combination, constitute medical necessity for dentures.*

Medical Policy 310 (emphasis added). This policy also precludes the inability to chew from constituting a "disability[ ] or other adverse health condition[ ]" under A.A.C. R9–22–101(B)'s definition of "medically necessary." Thus, the very medical purpose for which most individuals would assume dentures are medically necessary, the inability to chew, is specifically *precluded* by A.A.C. R9–22–201 and Medical Policy 310 from satisfy-

ing the regulatory and statutory requirement that dentures be covered when "medically necessary." AHCCCS imposes a medical condition other than, and in addition to, the inability to chew.[2]

¶ 17 We now turn to the question of whether the restrictions implemented by regulation A.A.C. R9–22–201 and Medical Policy 310, and applied to the definition of "medically necessary" in R9–22–101(B), are invalid as impermissibly limiting the statute.

## IV.

### A.

¶ 18 In determining whether A.A.C. R9–22–201 and Medical Policy 310 unlawfully restrict the statutory grant of coverage, we give great weight to "[a]n agency's interpretation of a statute or regulation it implements." *U.S. Parking Sys. v. City of Phoenix,* 160 Ariz. 210, 211, 772 P.2d 33, 34 (App. 1989); *Capitol Castings, Inc. v. Ariz. Dep't of Econ. Sec.,* 171 Ariz. 57, 60, 828 P.2d 781, 784 (App.1992) (same). Regardless, " '[w]e are free to draw our own legal conclusions in determining if the [agency] properly interpreted the law.' " *Capitol Castings,* 171 Ariz. at 60, 828 P.2d at 784 (quoting *Avila v. Ariz. Dep't of Econ. Sec.,* 160 Ariz. 246, 248, 772 P.2d 600, 602 (App.1989)). Because review of a legal issue is *de novo,* "[c]ourts must remain the final authority on critical questions of statutory construction." *U.S. Parking Sys.,* 160 Ariz. at 211, 772 P.2d at 34.

¶ 19 As a second cardinal principle, if the construction given by the agency is not consistent with the enabling legislation, the interpretation—whether expressed in regulation, policy, or otherwise—is invalid. *See R.L. Augustine Constr. Co. v. Peoria Unified Sch. Dist. No. 11,* 188 Ariz. 368, 371, 936 P.2d 554, 557 (1997) (striking agency rules that were not consistent with enabling

---

To that extent, it is also invalid if applied in that manner, for the same reasons set forth herein.

**2.** Mercy Care Plan argues that Sharpe improperly asserts for the first time that it is impermissible for AHCCCS to require that a practitioner prescribe dentures to alleviate a medical condition to establish medical necessity. We consider

only those issues properly raised in the superior court. *Crowe v. Hickman's Egg Ranch, Inc.,* 202 Ariz. 113, 116, ¶ 16, 41 P.3d 651, 654 (App.2002). Here, Sharpe contested the legal standard for medical necessity applied by the director in her complaint to the superior court. Therefore, we find Sharpe did not waive this issue.

legislation). "An administrative agency ... must exercise its rule-making authority within the parameters of its statutory grant; to do otherwise is to usurp its legislative authority." *Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.*, 177 Ariz. 526, 530, 869 P.2d 500, 504 (1994); *see also Cochise County v. AHCCCS*, 170 Ariz. 443, 445, 825 P.2d 968, 970 (App.1991) (same).

■ ¶ 20 In determining whether the regulations exceed the statutory grant of authority, we focus on the language of the statute as "[t]he scope of an agency's power is *measured by the statute* and may not be expanded by agency fiat." *Cochise County*, 170 Ariz. at 445, 825 P.2d at 970 (emphasis added); *see also Caldwell v. Ariz. State Bd. of Dental Exam'rs*, 137 Ariz. 396, 398–99, 670 P.2d 1220, 1222–23 (App.1983) (same). Importantly, "a rule or regulation of an administrative agency should not be inconsistent with or contrary to the provisions of a statute, particularly the statute it seeks to effectuate." *Ferguson v. Ariz. Dep't of Econ. Sec.*, 122 Ariz. 290, 292, 594 P.2d 544, 546 (App.1979). As our supreme court has instructed, "[i]t is fundamental that the respondent [administrative agency] could not enact a regulation nor make an order that would conflict with the proper interpretation of the statute." *McCarrell v. Lane*, 76 Ariz. 67, 70, 258 P.2d 988, 989 (1953).

## B.

¶ 21 As set forth above, the only two requirements imposed by the legislature for a person covered under AHCCCS to obtain dentures are that the dentures be (1) "ordered by a dentist" and (2) "medically necessary." A.R.S. § 36–2907(A)(6). These are the statutory requirements against which we must "measure" A.A.C. R9–22–201, Medical Policy 310, and their impact on AHCCCS's interpretation of what constitutes a "disability or other adverse health condition[ ]" in A.A.C. R9–22–101(B)'s definition of "medically necessary." *See, e.g., Cochise County*, 170 Ariz. at 445, 825 P.2d at 970. The director has blended these two statutory requirements. The director has applied regulation A.A.C. R9–22–201 and Medical Policy 310 to its regulatory definition of medical necessity

in A.A.C. R9–22–101(B) not only to preclude a dentist acting alone from making a decision of medical necessity but to require a medical condition in addition to the inability to chew. For that reason, we discuss the two statutory elements that the dentures be (1) "ordered by a dentist" and (2) "medically necessary," in a consolidated fashion.

## C.

■ ¶ 22 The enabling statute specifically provides for "prosthetic devices ... ordered by a physician *or* primary care practitioner *or dentures ordered* by a dentist." A.R.S. § 36–2907(A)(6) (emphasis added). The statute is in the disjunctive for prosthetic devices: physician *or* dentist. *Id.* It is not in the conjunctive; it does not require both a dentist and physician. *Id.* In fact, it is only a dentist that can order dentures. *Id.* AHCCCS contends that the second requirement of "medically necessary" imposes the additional requirement of a physician or primary care provider who opines that dentures are necessary. We disagree.

¶ 23 There can be no doubt that the difference between disjunctive and conjunctive is significant, *see Miller v. City of Tucson*, 153 Ariz. 380, 381, 736 P.2d 1192, 1193 (App.1987) (rejecting a disjunctive reading of a municipal code provision because "[t]he obvious and natural meaning of the word 'and' in [the code provision] is 'and' "), and that the legislature knows how to differentiate between the two. *See de la Cruz v. State*, 192 Ariz. 122, 125, ¶ 11, 961 P.2d 1070, 1073 (App.1998) (asserting that "the use of the word 'and' in [the applicable statute] manifests a legislative intent .... requir[ing] the interpretation of the two words in combination, defeating the [ ] argument that they operate in the disjunctive") (citations omitted). It would seem unusual that by specifically providing for the disjunctive in prosthetic devices, and limiting the ordering of dentures to dentists, that the legislature meant to require a combined decision with a primary care physician that dentures are "medically necessary." In this regard, AHCCCS's regulation defining what is medically necessary, A.A.C. R9–22–101(B), is consistent with the statute as it provides for the disjunctive. It states the decision of

what is medically necessary is to be determined by "a physician *or other licensed practitioner* of the healing arts within the scope of practice under state law." (Emphasis added.)

¶ 24 The other provisions of A.R.S. § 36–2907(A) also support our conclusion that the legislature did not intend for a physician or primary care provider to be the gatekeeper for every decision of medical necessity for a covered service. In some of the subsections of § 36–2907(A), providing for covered services, the legislature has required that a physician or primary care practitioner be involved. A.R.S. § 36–2907(A)(1) (permitting "[i]npatient hospital services ... provided *under the direction of a physician or primary care practitioner* ") (emphasis added);—(A)(2) (referencing "[o]utpatient health services ... provided by or *under the direction of a physician or a primary care practitioner* ") (emphasis added);—(A)(3) (referencing "[o]ther laboratory and X-ray services *ordered by a physician or a primary care practitioner* ") (emphasis added);—(A)(4) (referencing "[m]edications that are ordered on prescription by a physician *or a dentist* ") (emphasis added);—(A)(10) (referencing "[p]odiatry services performed by a podiatrist licensed pursuant to title 32, chapter 7, *and ordered by a primary care physician or primary care practitioner* ") (emphasis added). In other subsections of A.R.S. § 36–2907(A), the legislature has made no such requirement. A.R.S. § 36–2907(A)(5) (referencing "[e]mergency dental care and extractions for persons who are at least twenty-one years of age" and making no requirement for the involvement of a physician or a primary care practitioner);—(A)(7) (referencing "treatment of medical conditions of the eye excluding eye examinations for prescriptive lenses and the provision of prescriptive lenses" and making no requirement for the involvement of a physician or a primary care practitioner);—(A)(8) (same as to specified "[e]arly and periodic health screening and diagnostic services");—(A)(9) (same as to "[f]amily planning services that do not include abortion or abortion counseling");—(A)(12) (same as to "[a]mbulance and non-ambulance transportation").

¶ 25 If the legislature had intended that the term "medically necessary" be construed to require a physician or primary care provider's endorsement for every provided service, it would have been meaningless for the legislature to specifically make that provision for some services but not for others. *See Herman v. City of Tucson*, 197 Ariz. 430, 434, ¶ 14, 4 P.3d 973, 977 (App.1999) ("[W]e must avoid interpreting a statute so as to render any of its language mere 'surplusage,' but rather, must give meaning to 'each word, phrase, clause, and sentence ... so that no part of the statute will be void, inert, redundant, or trivial.' " (quoting *Walker v. City of Scottsdale*, 163 Ariz. 206, 210, 786 P.2d 1057, 1061 (App.1989))). Further, that some subsections of A.R.S. § 36–2907(A) require the involvement of a physician or a primary care practitioner and some do not, makes it plain that the legislature knew how to add that requirement and intentionally chose not to do so in some circumstances. Under the statutory interpretive principle of *expressio unius est exclusio alterius*, when the legislature makes a requirement in one provision of the statute but does not include it in another, we assume the absence of the requirement was intentional. *Luchanski v. Congrove*, 193 Ariz. 176, 179, ¶ 14, 971 P.2d 636, 639 (App. 1998) ("When the legislature has specifically included a term in some places within a statute and excluded it in other places, courts will not read that term into the sections from which it was excluded."). This further supports our reading of the plain language of A.R.S. § 36–2907(A)(6) that the legislature meant what it said in the provision of dentures and left that decision with a licensed dentist, rather than a physician or primary care provider.

¶ 26 By adopting a rule, a policy, and an interpretation of the regulatory definition of "medically necessary" that require a dentist *and* a physician to determine medical necessity, AHCCCS's requirements are "inconsistent with or contrary to the provisions of ... the statute it seeks to effectuate." *Ferguson*, 122 Ariz. at 292, 594 P.2d at 546; *see also McCarrell*, 76 Ariz. at 70, 258 P.2d at 989.

## D.

¶ 27 In addition to requiring an opinion from a physician, rather than solely an opinion from a dentist, A.A.C. R9–22–201 and Medical Policy 310 require that the additional medical condition be something other than "the inability to masticate." AHCCCS has also used this same rationale to preclude "the inability to masticate" from being a "disability[ ] or other adverse health condition[ ]" in its definition of "medically necessary" in A.A.C. R9–22–101(B).

¶ 28 As noted earlier, Medical Policy 310 provides that "[n]either the inability to properly masticate nor cosmetic considerations, alone or in combination, constitute medical necessity for dentures." In this case we focus only on whether the director may exclude "the inability to properly masticate" as a basis for the provision of dentures. We do not address the factor of "cosmetic considerations" as it is not at issue. Again, we "measure" the restriction against providing dentures on the basis of "the inability to chew" by reference to the statute. *See Cochise County,* 170 Ariz. at 445, 825 P.2d at 970. In construing statutes, we give words their common, ordinary usage unless otherwise defined. *Dowling v. Stapley,* 218 Ariz. 80, 84, ¶ 11, 179 P.3d 960, 964 (App.2008) ("When no statutory definition is provided, we turn to common ordinary definitions of the term at issue.").

¶ 29 As defined in the applicable federal regulations, dentures are designed "to replace a full or partial set of teeth." 42 C.F.R. § 440.120(b); *see also* Dorland's Illustrated Medical Dictionary 358 (26th ed. 1981) (The term "denture" is "ordinarily used to designate an artificial replacement for missing natural teeth and adjacent tissues"). Teeth are "a set of small hard structures in the jaws used *for mastication of food.*" Dorland's Illustrated Medical Dictionary 1375

(emphasis added); *see also* Merriam–Webster's Collegiate Dictionary 1239 (10th ed.2001) (defining "teeth" as the plural of "tooth" which is "one of the hard bony appendages that are borne on the jaws … and serve esp[ecially] for the prehension and *mastication of food* ") (emphasis added). At the risk of restating the obvious, and as these authorities clearly provide, the plain purpose of legislatively providing coverage for dentures is to restore the ability to masticate and eat properly. This, however, is the very need that the director has precluded from establishing the "medically necessary" element required to receive dentures.

¶ 30 AHCCCS contests this "plain meaning" reading of the statute on the grounds that the statute "does not say a word about chewing or eating." As noted, however, any reasonable definition of "dentures" plainly implies chewing and eating. It is difficult to conceive of why else the legislature would make dentures available. The legislature did not require a medical condition other than, or in addition to, that for which dentures are typically (if not always) required: chewing food. This, however, is precisely how AHCCCS has construed this statutory provision, thwarting its primary purpose. It is akin to saying a prosthetic foot will only be provided if one can show a medical need *other than* the ability to walk properly. One of the primary principles of statutory interpretation is not to construe statutes to give an absurd result. *Lake Havasu City v. Mohave County,* 138 Ariz. 552, 557, 675 P.2d 1371, 1376 (App.1983) ("Statutes must be given a sensible construction which will avoid absurd results."). We consider AHCCCS's interpretation to fall within that category. At a minimum, AHCCCS's construction is "inconsistent with" and "contrary to" the plain purpose of the statute "it seeks to effectuate." *See Ferguson,* 122 Ariz. at 292, 594 P.2d at 546. Accordingly, we reject it.[3]

---

**3.** AHCCCS also contends that this plain language reading does away with the need for documentation of "medical necessity." On the contrary, it requires documentation or other appropriate testimony, but only of the medical necessity of dentures to restore the ability to chew, *see infra* ¶ 41, not of an additional medical need. Additionally, AHCCCS argues that the plain language reading we adopt implies "that Congress intended Medic-

aid to provide an artificial tooth or artificial teeth any time a beneficiary loses some of her natural teeth." Again, AHCCCS errs. Our holding in no way alters (nor could it) the congressional provision that dentures are an optional, not a mandatory, requirement. The legislature is free to remove this segment of AHCCCS coverage if and when it chooses. Additionally, we address a situation where an individual has lost all her

¶ 31 These same reasons apply to AHCCCS's construction of the terms "disability or other health conditions" that are part of the regulatory definition of "medically necessary." A.A.C. R9–22–101(B). This definition requires the involved health care practitioner to determine that the service will "prevent disease, disability, or other adverse health conditions or their progression, or to prolong life." R9–22–101(B). Standing alone, we have no quarrel with this definition of "medically necessary." What AHCCCS has done, however, is to import Medical Policy 310 into that otherwise appropriate definition. By doing so, AHCCCS again thwarts the primary purpose of providing dentures. It uses its interpretation of "disability or other adverse health conditions," as framed by Medical Policy 310, to preclude AHCCCS enrollees from receiving the service (dentures) for the very purpose the legislature granted it (so that enrollees can chew food). As such, AHCCCS's importation of Medical Policy 310 to the definition of "medically necessary" unlawfully takes away the very coverage the legislature granted. *See* *McCarrell*, 76 Ariz. at 70, 258 P.2d at 989 (holding that an agency "could not enact a regulation ... that would conflict with the proper interpretation of the statute"); *Ferguson*, 122 Ariz. at 292, 594 P.2d at 546 (same).

## V.

¶ 32 AHCCCS contends, however, that its statutory rule-making authority under A.R.S. §§ 36–2903.01(E) and –2903(B)(4) permits it to define the parameters of "medically necessary" and therefore its restrictive regulations, policy, and interpretation should stand. Section 36–2903.01(E) requires the AHCCCS director to "adopt rules that further specify the medical care and hospital services that are covered by the system," and § 36–2903(B)(4) permits the director to develop "provisions designed to ensure that covered health and medical services provided through the system are not used unnecessarily or unreasonably." Mercy Care Plan emphasizes that because the provision of dentures is an optional service and need not be provid-

ed at all, federal law permits AHCCCS to limit the "amount, duration, or scope ... solely because of the diagnosis, type of illness or condition of the recipient." 42 C.F.R. § 440.230(c). And, although not cited by any of the parties, A.R.S. § 36–2907(D) also requires the director to "adopt rules necessary to limit, *to the extent possible,* the scope, duration and amount of services." (Emphasis added.)

¶ 33 This court has recognized that the Medicaid Act gives state agencies "substantial discretion" to determine "the proper mix of amount, scope, and duration limitations on coverage [of optional services] as long as care and services are provided in the best interests of the recipients." *Callen*, 216 Ariz. at 504, ¶ 15, 168 P.3d at 912 (internal quotation marks omitted). However, one important limitation on the state agency's discretion is that the service offered "must be sufficient in amount, duration, and scope *to reasonably achieve its purpose.*" 42 C.F.R. § 440.230(b) (emphasis added). Our recent decision in *Callen v. Rogers,* is a good example of this principle.

¶ 34 In *Callen,* we dealt with a request for AHCCCS coverage for "emergency dental care" under another subsection of the same statutory provision, A.R.S. § 36–2907(A)(5). 216 Ariz. at 501, ¶ 5, 168 P.3d at 909. Like coverage for dentures under A.R.S. § 36–2907(A)(6), emergency dental care is also an optional service. *See* 42 C.F.R. §§ 440.225, 440.100 and 440.120. The plaintiff in *Callen* argued that "once a state elects to cover *any* dental service in its plan, it is obligated by the Act [Medicaid] in its implementing regulations to cover *all* necessary dental services." 216 Ariz. at 504, ¶ 16, 168 P.3d at 912 (emphasis added). We rejected this argument. We held that if the Medicaid Act's purpose "was to require each state *offering any* dental service to provide *all* necessary dental services ... [i]t has not done so." *Id.* at 506, ¶ 25, 168 P.3d at 914.

¶ 35 In reaching this conclusion, we stated the principle applicable here: we "examine the purpose of the state's inclusion of the optional service within its plan to ensure that

teeth, not merely one or some of them. *See infra* ¶ 41.

the state's purpose for providing the service is not frustrated" by any "amount, duration, and scope" limitations imposed by the regulation. *Id.* at 507, ¶ 28, 168 P.3d at 915. We are in complete accord with the reference to authorities outside Arizona for the proposition that "because dental services are optional under the act, [a state] was under no obligation to provide them even if necessary, but once it did so without limitations in its coverage statute, *the state welfare agency could not impose exclusions by regulation.*" *Id.* at 503–04, ¶ 14, 168 P.3d at 911–12 (citing *Jackson v. Stockdale,* 215 Cal.App.3d 1503, 264 Cal.Rptr. 525, 530–32 (App.1989)). In Callen, we recognized that "courts that have identified state regulations that limit the coverage specified in the state plan have stricken such regulations." *Id.* at 507, ¶ 28, 168 P.3d at 915; *see, e.g., McNeil–Terry v. Roling,* 142 S.W.3d 828, 833–34 (Mo.Ct.App. 2004) (holding that the state agency's emergency rule or non-statutory policy limiting covered dental services to only dentures and the treatment of teeth or mouth trauma violated the coverage statute); *Thie v. Davis,* 688 N.E.2d 182, 186, 189 (Ind.Ct.App.1997) (invalidating a regulatory amendment deleting the coverage of dentures when Indiana, by statute, opted to cover dental services and required coverage for medically necessary treatment).

¶ 36 In *Arizona Health Care Cost Containment System Administration v. Carondelet Health System,* 188 Ariz. 266, 935 P.2d 844 (App.1996), we likewise struck an AHCCCS regulation because it took away coverage that the legislature had provided. At issue in *Carondelet* was the definition of "emergency medical services." *Id.* at 269, 935 P.2d at 847. The legislature defined the term as "'immediate medical care ... in order to preserve the person's health, life or limb.'" *Id.* at 270, 935 P.2d at 848 (quoting A.R.S. § 41–1831(7)). AHCCCS, however, adopted a "sudden onset" rule which had the effect of precluding those who needed emergency medical services but "who have suffered symptoms for a period of time before their conditions became critical." *Id.* We struck down the "sudden onset" rule because its effect was "to eliminate emergency medical coverage for an entire group of patients who

would otherwise be covered." *Id.* The same is true here.

¶ 37 In this case, A.A.C. R9–22–201, Medical Policy 310, and AHCCCS's application of Medical Policy 310 to the definition of "medically necessary" in A.A.C. R9–22–101(B), frustrate the clear legislative intent to provide dentures by requiring a medical need other than the inability to chew. AHCCCS has not followed the legislative grant but "imposed[d] exclusions by regulation." *Callen,* 216 Ariz. at 504, ¶ 14, 168 P.3d at 912. As we held in *Carondelet,* AHCCCS's rulemaking authority does not permit it to "eliminate ... coverage for an entire group of patients who would otherwise be covered." 188 Ariz. at 270, 935 P.2d at 848.

¶ 38 We hold in this case that AHCCCS exceeded its statutory authority by requiring Sharpe to establish a medical need in addition to the inability to chew. Therefore, to the extent that A.A.C. R9–22–201, Medical Policy 310, and A.A.C. R9–22–101(B) either expressly state or are interpreted to require a medical need in addition to the inability to chew, they are invalid.

## VI.

¶ 39 Having determined that AHCCCS's regulations and policy are invalid to the extent that they require either (1) a medical need beyond the inability to chew and/or (2) that the dentures be ordered by a physician or primary care provider, we now turn to the question of the appropriate form of relief. When an administrative agency has applied an improper standard, we will remand unless there is no factual dispute left for resolution. *See Ference By and Through Ference v. Kirschner,* 176 Ariz. 530, 532–33, 862 P.2d 903, 905–06 (App.1993) (reversing and remanding for superior court to instruct the Director to enter a determination of eligibility where "every step in the eligibility determination ha[d] been completed, and subtracting the Director's error of law, findings and conclusions establishing eligibility ha[d] been made").

¶ 40 As noted at the outset, the two statutory requirements for dentures are that they be (1) "ordered by a dentist" and (2) "medi-

cally necessary." As to the first requirement, it has never been in dispute that the dentures were ordered by a dentist. As Mercy Care's denial letter stated: *"Your dentist's request* for immediate upper and lower dentures has been denied." Thus, the undisputed facts of record show that the first element necessary for coverage has been satisfied.

¶ 41 As to the second prong, whether dentures are "medically necessary," the undisputed facts also establish that there is no remaining factual dispute once the proper standard is applied. The director affirmed the factual finding of the ALJ that "[c]omplainant must have all of her teeth removed due to dental disease." The record supports this finding.[4] With no teeth, Sharpe falls squarely within the category of persons that the legislature contemplated would receive dentures; she has lost her ability to chew, and it may be restored with the provision of dentures. We emphasize that the facts before us do not present a question of a *partial* ability to chew normally; rather, they present a *complete* inability to chew normally as Sharpe will have no teeth.[5]

¶ 42 AHCCCS, in arguing for its requirement of a medical need beyond the inability to chew, argues that failing to adopt its standard results in a *per se* rule that the inability to chew results in coverage for dentures. While this will typically be the case—and is what the legislature intended—it is not a *per se* rule. As Sharpe points out, there may be unusual circumstances when a person due to disease or other muscular or neurological impairment has no ability to move his or her jaw, or is in a coma, or is required to receive nutrition through a feeding tube. In such cases, dentures would not be medically necessary as dentures would not assist in restoring the ability to chew. This, however, is not that case. Sharpe, like the bulk of our citizens, desires to, and is medically capable of, chewing foods in a typical fashion once dentures are provided.

¶ 43 Based on the factual record before us, the undisputed facts show that the dentures here were (1) "ordered by a dentist" and (2) "medically necessary." A.R.S. § 36–2907(A)(6). Accordingly, Sharpe is entitled to receive them.

## VII.

¶ 44 For the foregoing reasons, we reverse the superior court's judgment and hold that Sharpe is entitled to dentures pursuant to A.R.S. § 36–2907(A)(6). Sharpe requests an award of attorneys' fees incurred on appeal pursuant to A.R.S. § 12–348(A)(2) (2003).[6] Because she has prevailed on appeal, we grant her request upon compliance with Arizona Rule of Civil Appellate Procedure 21. *E. Vanguard Forex, Ltd. v. Ariz. Corp. Comm'n,* 206 Ariz. 399, 414–17, ¶¶ 52–62, 79 P.3d 86, 101–04 (App.2003). She is also entitled, as requested, to costs upon compliance with the applicable rule.

---

4. There is some assertion that because Sharpe has not yet had her teeth removed, she is not entitled to dentures. We view this as a non-issue. The director's fact-finding affirmed that Sharpe must have all her teeth removed. If she fails to do that, she will not be entitled to dentures, and, indeed, could not be fit for them.

5. Other portions of Medical Policy 310 have addressed what constitutes an inability to chew with regard to the need for partial dentures:

    If partial dentures are recommended, they must be deemed *essential for function.* As a standard, it may be considered that six posterior teeth in occlusion (three maxillary and three mandibular teeth in functional contact with each other) will be considered adequate for functional purposes. Abutment teeth must be free of decay and periodontally sound.

    Medical Policy 310(B)(1)(d). As a requirement for medically necessary partial dentures, an individual must have less than six posterior teeth usable for proper chewing. Here, Sharpe has none. Thus, under AHCCCS's standard of what is "essential for function," Sharpe clearly complies.

6. Section 12–348(A)(2) of the Arizona Revised Statutes provides as follows:

    A. In addition to any costs which are awarded as prescribed by statute, a court shall award fees and other expenses to any party other than this state or a city, town or county which prevails by an adjudication on the merits in any of the following:

    . . . .

    2. A court proceeding to review a state agency decision pursuant to chapter 7, article 6 of this title or any other statute authorizing judicial review of agency decisions.

    (Footnote omitted.)

CONCURRING: MICHAEL J. BROWN, Presiding Judge and MICHAEL R. McVEY, Judge.*

---

* NOTE: The Honorable Michael R. McVey, Judge of the Maricopa County Superior Court, has been authorized to participate in the disposition of this appeal by the Chief Justice of the Arizona Supreme Court pursuant to Article 6, Section 3, of the Arizona Constitution and A.R.S. §§ 12–145 to –147 (2001).