395 P.3d 292

**Sharon DI GIACINTO, Appellant,**

v.

**ARIZONA STATE RETIREMENT SYSTEM; Richard Hillis, Appellees.**

**No. 1 CA–CV 15–0722**

Court of Appeals of Arizona, Division 1.

FILED 4/4/2017

284

Robaina & Kresin, PLLC, Phoenix, By Thomas T. Griffin, Counsel for Appellant

Arizona State Retirement System, Phoenix, By Jothi Beljan, Counsel for Appellee Arizona State Retirement System

Richard Hillis, Peoria, Appellee

Presiding Judge Peter B. Swann delivered the opinion of the court, in which Judge Kent E. Cattani and Judge Donn Kessler joined.

## OPINION

SWANN, Judge:

¶1 In this appeal, we hold that A.R.S. § 38–775 requires a former spouse of an Arizona State Retirement System ("ASRS") retiree to be treated as a "spouse" for purposes of survivor benefits awarded under a domestic relations order ("DRO"). Because of this requirement, we further hold that the age limits on non-spousal contingent annuitants contained in Arizona Administrative Code R2–8–126(H) do not apply to former spouses whose payments are ordered by Qualified DROs ("QDROs").

¶2 Sharon Di Giacinto appeals a judgment holding that ASRS could terminate her survivorship rights in her ex-husband, Richard Hillis's, retirement annuity that the superior court ordered as part of a decree of dissolution. A.A.C. R2–8–126(H) provides that "[a] member who is ten years and one day, or more, older than the member's non-spousal contingent annuitant is not eligible to participate in a 100% joint-and-survivor option." [1] The superior court ruled that the divorce decree and final DRO were not acceptable under A.R.S. § 38–773(B), because Di Giacinto, as a former spouse, is a "nonspouse" under A.A.C. R2–8–126(H) and because she is more than ten years younger than her former husband. We disagree. Because the final DRO complied with all statutory requirements necessary to qualify Di Giacinto as a spousal contingent annuitant, we reverse and remand for an entry of judgment.

## FACTS AND PROCEDURAL HISTORY

¶3 The relevant facts are undisputed. [2] Di Giacinto and Hillis were married in 1983. In 2003, Hillis retired after working almost 39 years with an ASRS employer. Under A.R.S. § 38–760(B)(1) and A.A.C. R2–8–120(A)(2),

Hillis elected a 100% joint and survivor annuity, which provided a reduced monthly benefit amount but continued payments until Di Giacinto's death if she outlived him ("the plan").

¶4 In February 2006, Hillis (then age 69) and Di Giacinto (then age 45) divorced, and the superior court issued a decree of dissolution with orders that a third party prepare a supplemental DRO. ASRS approved a draft DRO. In June 2007, the court issued the final DRO which awarded Di Giacinto 48.75% of the monthly annuity benefit and 100% survivor benefits as a contingent annuitant. ASRS agreed to comply with the final DRO, designating it a QDRO.

¶5 In June 2014, Hillis requested a review of the final DRO's distribution allocation, invoking ASRS's authority to correct errors under A.R.S. § 38–765. ASRS nominally denied his "request ... to facilitate any legal review of the current DRO[, because] any formal amendment to the [final] DRO must be done in the Superior Court of Arizona." Nonetheless, under A.R.S. § 38–773(A), ASRS determined that the final DRO was "not acceptable," because it preserved Di Giacinto's survivor benefits, which it concluded violated A.A.C. R2–8–126(H).

¶6 In July 2014, Di Giacinto requested a hearing on the issue. After the hearing, an ALJ issued a proposed ruling for the ASRS Board concluding that when the decree was entered, Di Giacinto "was automatically removed as the [contingent annuitant on the plan] by operation of law." The ALJ recommended that Di Giacinto's appeal be dismissed, and the Board did so.

¶7 Di Giacinto appealed to the superior court, which affirmed. The superior court did not directly address the statutory or equitable issues Di Giacinto raised except to adopt the view that A.R.S. § 38–773(D) removed Di Giacinto as a beneficiary by operation of law. Di Giacinto appeals. [3]

---

1.  We use the language of the latest version of the regulation because there have been no material revisions since Hillis's retirement.

2.  Because we resolve this appeal as a matter of law, we need not address Di Giacinto's factual

arguments concerning the ASRS Board's hardship findings with respect to equitable estoppel.

3.  Hillis is also an appellee. He joins most of ASRS's arguments on appeal and also argues that the final DRO's prohibition against his

## STANDARD OF REVIEW

■ ¶ 8 We review questions of statutory interpretation de novo. *J.L.F. v. Ariz. Health Care Cost Containment Sys.*, 208 Ariz. 159, 161, ¶ 10, 91 P.3d 1002 (App. 2004). Under A.R.S. § 12–910(E), we must reverse an administrative decision if it is contrary to law. When a statute is part of a broader statutory scheme concerning a single subject, we construe it in conjunction with related statutes, giving effect to each provision. *Johnson v. Mohave County*, 206 Ariz. 330, 333, ¶ 11, 78 P.3d 1051 (App. 2003). In interpreting statutes, we "give meaning to 'each word, phrase, clause, and sentence ... so that no part of the statute will be void, inert, redundant, or trivial.'" *Herman v. City of Tucson*, 197 Ariz. 430, 434, ¶ 14, 4 P.3d 973 (App. 1999) (citation omitted).

■ ¶ 9 "We give great weight to '[a]n agency's interpretation of a statute or regulation it implements.'" *Sharpe v. Ariz. Health Care Cost Containment Sys.*, 220 Ariz. 488, 494, ¶ 18, 207 P.3d 741 (App. 2009) (citation omitted). But we make our own legal conclusions to determine whether the agency properly interpreted the law. *Avila v. Ariz. Dep't of Econ. Sec.*, 160 Ariz. 246, 248, 772 P.2d 600 (App. 1989). An "agency's interpretation is not infallible, and courts must remain the final authority on critical questions of statutory construction." *U.S. Parking Sys. v. City of Phoenix*, 160 Ariz. 210, 211, 772 P.2d 33 (App. 1989). Regulations may not be applied inconsistent with or contrary to the statutes they implement. *Sharpe*, 220 Ariz. at 495, ¶ 20, 207 P.3d 741.

## DISCUSSION

¶ 10 A.R.S. § 38–773(B) provides: "[a]n acceptable [DRO] shall not require the board to provide any type, form or time of payment of severance, survivor or retirement benefits or any severance, survivor or retirement benefit option that is not provided under this article." ASRS argues that an acceptable DRO cannot retain a former spouse as the contingent annuitant if he or she does not conform to the age restrictions in A.A.C. R2–8–126(H). That regulation provides, in pertinent part, that "[a] member who is ten years and one day, or more, older than the member's *non-spousal* contingent annuitant is not eligible to participate in a 100% joint-and-survivor option." (Emphasis added.) We find no statutory support for ASRS's contention that "nonspouses" include former spouses when a QDRO recognizes the former spouse's community property interest in the survivor benefits.

## I. UNDER A VALID QDRO, FORMER SPOUSES ARE NOT "NONSPOUSES" FOR PURPOSES OF DETERMINING THE LIMITS ON CONTINGENT ANNUITANTS.

### A. Controlling Federal Law Excludes Former Spouses Whose Benefits are Subject to a QDRO From the Definition of "Nonspouse."

¶ 11 The term "non-spousal contingent annuitant" as used in R2–8–126 is not defined in the regulation or in statute. A.R.S. § 38–775(F) prescribes the distributions that ASRS may make to "nonspouse" beneficiaries. Subsection (F)(1) limits benefits payable to nonspouses in accordance with the table contained in 26 C.F.R. § 1.401(a)(9)–6 at Q–2, A–2(c)(2). The table limits the maximum percentage of the member's benefits that non-spousal contingent annuitants may receive based on the age difference between the member and the contingent annuitant. In accordance with A.R.S. § 38–760(B)(1), which provides that "all, two-thirds or one-half of the retirement income, as the member elects, shall be continued during the lifetime of the contingent annuitant designated by the retiring member," R2–8–126(H) limits a member's selection based on the age difference between the member and the nonspouse contingent annuitant.

■ ¶ 12 Read in isolation, the term "nonspouse" might be susceptible to an interpretation that would include former spouses. But the remainder of Title 38, Chapter 5, Article 2, requires us to conclude that the term "nonspouse" is not based on an individ-

---

changing to a straight life annuity that would pay higher monthly benefits and eliminate Di Giacinto's survivor benefits was improper. Because the decree is not properly before us, we presume the DRO is valid.

ual's status as a spouse at the time of distribution.

¶ 13 A.R.S. § 38–775(A)(1) provides that "the requirements of this section take precedence over any inconsistent provisions of this article." Section 38–775(A)(2) provides that "[a]ll distributions required under this section *shall* be determined and made pursuant to § 401(a)(9) of the internal revenue code and the regulations that are issued under that section." (Emphasis added.) As a matter of Arizona law, therefore, the statutory limitations on non-spousal contingent annuitants in § 38–775—and any related regulations—must be interpreted consistent with the relevant provisions of the Internal Revenue Code.[4]

¶ 14 Section 401(a)(9) of the Internal Revenue Code sets general rules governing how, when, and to whom benefits may be distributed, including spousal survivor benefits. The regulations under that section provide:

> A *former* spouse to whom all or a portion of the employee's benefit is payable pursuant to a QDRO will be treated as a *spouse* (including a surviving spouse) of the employee for purposes of section 401(a)(9), ... regardless of whether the QDRO specifically provides that the former spouse is treated as the spouse....

26 C.F.R. § 1.401(a)(9)–8 at Q–6, A–6(a) (emphases added). The plain language of the regulation that § 38–775 incorporates requires ASRS to treat Di Giacinto as a spouse if the decree or final DRO is a QDRO ("the federal former spouse exception"). We therefore reject ASRS's attempt to equate "former spouse" with "nonspouse" for these purposes.[5]

**B. Though the Decree Was Not a QDRO, the Final DRO Was a QDRO, Effective Even When Entered After the Decree.**

¶ 15 A QDRO for purposes of the federal former spouse exception is "a [DRO] ...

which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan." 26 U.S.C. § 414(p)(1)(A)(i); *see* 26 C.F.R. § 1.401(a)(9)–8 at Q–6 (QDRO for purposes of the federal former spouse exception is defined by § 414). The term "alternate payee" refers to a spouse or former spouse "who is recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such participant." 26 U.S.C. § 414(p)(8).

¶ 16 A DRO is:

> any judgment, decree, or order (including approval of a property settlement) which—
>
> (i) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and
>
> (ii) is made pursuant to a State domestic relations law (including a community property law).

26 U.S.C. § 414(p)(1)(B). The DRO must specify (1) the names and last known mailing addresses of the named participant and alternate payee, (2) the amount or percentage of the benefits to be paid to the alternate payee, (3) "the number of payments or period to which the order applies," and (4) "each plan to which [the DRO] applies." 26 U.S.C. § 414(p)(2). The DRO (a) cannot require ASRS to provide "any type or form of benefit, or any option, not otherwise provided under the [member's] plan," (b) cannot require ASRS to provide increased benefits as determined by the actuarial value of the plan, and (c) may not revoke the benefits owed to another alternate payee under a different QDRO. 26 U.S.C. § 414(p)(3).

---

4. ASRS argues that because it is a tax-qualified governmentally defined benefit plan, federal law does not apply to it. While it is true that federal law does not impose these regulations on ASRS, the Arizona legislature has selectively invoked certain provisions of federal law. Therefore, our interpretation must, as a matter of state law, be guided by the federal provisions that Arizona has

chosen to incorporate into ASRS's governing statutes.

5. Our interpretation does not render the term "nonspouse" meaningless, because members enjoy broad discretion in their choice of contingent annuitants, and may, for example, name their children as "nonspouse beneficiaries."

¶ 17 The decree itself is not a QDRO for purposes of the federal former-spouse exception, because it does not list the address or last known address of Hillis or Di Giacinto. But the final DRO meets all of the requirements, as ASRS acknowledged when the final DRO was entered.

¶ 18 ASRS argues that if the decree itself was not a QDRO, then the final DRO could not be a QDRO. A QDRO is "*any judgment, decree, or order* ... which ... relates to the provision of ... marital property rights to [a] spouse [or] *former spouse.*" 26 U.S.C. § 414(p)(1)(B)(i) (emphases added). By using "any" and "former spouse," the statute unambiguously allows a QDRO to be issued after a marriage is dissolved. We therefore hold that a QDRO need not be entered contemporaneously with the decree of dissolution—it must simply include all the elements in 26 U.S.C. § 414(p)(1)–(3).

## II. THE ARIZONA STATUTES GOVERNING ASRS DID NOT AUTOMATICALLY TERMINATE DI GIACINTO'S SURVIVOR BENEFITS.

¶ 19 ASRS also argues, and the superior court ruled, that A.R.S. § 38–773(D) automatically terminated Di Giacinto's rights to survivor benefits upon divorce. But ASRS's reading ignores the first twelve words of that provision:

*Except as provided by the express terms of a domestic relations order*, the divorce or annulment of a member's marriage revokes any revocable ... [d]isposition or appointment of benefits made by a divorced member to that member's former spouse....

A.R.S. § 38–773(D) (emphasis added). A.R.S. § 38–773(H) provides that:

"Domestic relations order" means *any judgment, decree, order or approval of a property settlement agreement* entered in a court of competent jurisdiction that:

(a) Relates to marital property rights of a spouse *or former spouse.*

(b) Creates or recognizes in the spouse *or former spouse* the existence of an alternate payee's right to severance, survivor or retirement benefits.

(c) Assigns the spouse *or former spouse* as alternate payee the right to receive all or part of the severance, survivor or retirement benefits payable to the member.

(Emphases added.)

¶ 20 Both the decree and the final DRO satisfy the requirements of § 38–773(H), and the dissolution therefore did not work an automatic defeasance of Di Giacinto's rights to survivor benefits.

### CONCLUSION

¶ 21 For the foregoing reasons, we hold that ASRS has no statutory authority to limit a former spouse's survivor benefits if a qualified domestic relations order preserves them. We therefore reverse, and remand for entry of judgment in favor of Di Giacinto. Under A.R.S. § 12–348(A)(2), we grant Di Giacinto's request for attorney's fees upon compliance with ARCAP 21.