CONCURRING: PHILIP G. ESPINOSA, and MICHAEL MILLER, Judges.

308 P.3d 1201

**WILDEARTH GUARDIANS, INC,
Plaintiff/Appellant/ Cross–
Appellee,**

v.

**Vanessa HICKMAN, Arizona State Land
Commissioner, Defendant/Appellee,**

**Galyn and Roxanne Knight,
Defendants/Appellees/
Cross–Appellants.**

**No. 1 CA–CV 12–0338.**

Court of Appeals of Arizona,
Division 1, Department A.

Sept. 12, 2013.

Arizona Center for Law in the Public Interest By Timothy M. Hogan, Joy E. Herr–

Cardillo, Phoenix, Attorneys for Appellant/Cross–Appellee WildEarth Guardians, Inc.

Thomas C. Horne, Attorney General By Joy Hernbrode, Assistant Attorney General, Paul A. Katz, Assistant Attorney General, Natural Resources Section, Phoenix, Attorneys for Appellee Vanessa Hickman.

Brown & Brown Law Offices, PC By David A. Brown, Douglas E. Brown, Eagar, Attorneys for Appellees/Cross–Appellants Galyn & Roxanne Knight.

## OPINION

CATTANI, Judge.

¶ 1 WildEarth Guardians ("WildEarth") appeals from the superior court's judgment affirming the Arizona State Land Department's decision to grant a State Land Trust grazing lease to Galyn and Roxanne Knight. WildEarth also appeals the superior court's award of costs, including expert witness fees, to the Knights. The Knights cross-appeal from the superior court's denial of attorney's fees. For reasons that follow, we affirm the judgment, but we vacate the Knights' cost award to the extent it includes expert witness fees.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 The Knights held a state trust lands grazing lease for land adjacent to property they own near Springerville, Arizona. Their ten-year lease was set to expire on November 30, 2006. Before the expiration of the lease, WildEarth filed an application with the Arizona State Land Department to lease the same land. The Land Department issued a Notice of Conflicting Applications and requested that each applicant submit a statement of equities addressing the following factors set forth in Arizona Administrative Code ("A.A.C.") R12–5–506(D) for determining which applicant has the highest and best bid:

1. An offer to pay more than appraised rental as an equity, if the Department determines not to go to bid on the conflict;

2. Whether the applicant's proposed land use or land management plan is beneficial to the Trust;

3. The applicant's access to or control of facilities or resources necessary to accomplish the proposed use;

4. The applicant's willingness to reimburse the owner of reimbursable non-removable improvements;

5. The applicant's previous management of land leases, land management plans, or any history of land or resource management activities on private or leased lands;

6. The applicant's experience associated with the proposed use of land;

7. Impact of the proposed use on future utility and income potential of the land;

8. Impact to surrounding state land;

9. Recommendations of the Department's staff; and

10. Any other considerations in the best interest of the Trust.

¶ 3 The Land Department's Director of Natural Resources Division reviewed the parties' statements of equities, their responses to the other party's statement of equities, and their responses to the Land Department's request for additional information. The Director also conducted a three-day property visit. In a 39–page report, the Director concluded that the equities in favor of the Knights outweighed WildEarth's offer of additional rent. The Land Department Commissioner reviewed the information provided by the parties and the Director, and then directed the parties to submit sealed bids for additional rent.

¶ 4 The Knights administratively appealed the Commissioner's order requiring sealed bids. An Administrative Law Judge ("ALJ") recommended that the Commissioner's order for sealed bids be rescinded and that the Knights' lease be renewed because the evi-

dence showed that the Knights had superior equities, which outweighed WildEarth's offer of more rent. The Commissioner accepted the ALJ's recommendations. WildEarth then filed a complaint in superior court.

¶5 The superior court affirmed the Commissioner's decision and entered judgment. Although the court denied the Knights' request for an award of attorney's fees, it awarded the Knights costs in an amount that included expert witness fees. WildEarth timely appealed, and the Knights timely cross-appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12–913 and –2101(A)(1).[1]

## DISCUSSION

¶6 WildEarth raises three issues on appeal, whether: (1) the statutory process for awarding leases of state trust lands in Arizona violates the Enabling Act and the Arizona Constitution; (2) the Commissioner's determination to award the lease to the Knights was arbitrary and capricious, or alternatively, an abuse of discretion; and (3) the superior court erred by including the Knights' expert witness fees in the cost award. The Knights raise one issue on cross-appeal: whether the superior court erred by denying their request for attorney's fees under A.R.S. § 12–348.

■ ¶7 "When an agency decision is based on factual determinations, judicial review is limited to determining whether the administrative action was an abuse of discretion." *Forest Guardians v. Wells*, 201 Ariz. 255, 258–59, ¶9, 34 P.3d 364, 367–68 (2001). An agency's interpretation of statutory or constitutional provisions, however, is reviewed de novo. *Id.* at 259, ¶9, 34 P.3d at

368. A reviewing court may not substitute its judgment for that of the agency on factual questions or matters of agency expertise. *Webb v. Ariz. Bd. of Med. Exam'rs.*, 202 Ariz. 555, 557, ¶7, 48 P.3d 505, 507 (App.2002). An agency decision is not arbitrary and capricious if it is supported by substantial evidence. *Sharpe v. AHCCCS*, 220 Ariz. 488, 492, ¶9, 207 P.3d 741, 745 (App.2009).

## I. Constitutionality of Arizona's Statutory Process of Awarding State Trust Land Leases.

¶8 In 1910, Congress passed the Arizona New Mexico Enabling Act, which authorized the citizens of the Arizona and New Mexico territories to form state governments and, among other provisions, granted the future State of Arizona approximately ten million acres of land to be held in trust and used for the support of state public schools. *See* Arizona New Mexico Enabling Act, Pub.L. No. 219, ch. 310, 36 Stat. 557 (1910); *see also Kadish v. Ariz. State Land Dep't.*, 155 Ariz. 484, 486–87, 747 P.2d 1183, 1185–86 (1987). The Arizona Land Department, under the supervision of the Land Department Commissioner, administers state trust lands. *See* A.R.S. §§ 37–102, –132.

■ ¶9 The Enabling Act requires that any sale or lease of trust lands be made to the "highest and best bidder at a public auction." *Forest Guardians*, 201 Ariz. at 259, ¶11, 34 P.3d at 368 (quoting Enabling Act § 28).[2] A disposition that is "not made in substantial conformity" with this requirement is "null and void," notwithstanding any contrary provision of Arizona's constitution or laws. *Id.* (quoting Enabling Act § 28). These requirements were incorporated into the Arizona Constitution. *Id.* (citing Ariz.

---

**1.** Absent material revisions after the relevant date, statutes cited refer to the current version unless otherwise indicated.

**2.** Preliminarily, the Knights argue that WildEarth is not a qualified bidder under A.R.S. § 37–284(C). The Knights contend that, because WildEarth does not intend to return the land to grazing, its bid is inconsistent with the purposes of the Enabling Act. In *Forest Guardians, however-*

er, the Arizona Supreme Court stated that "restoration and preservation are already and must continue to be considered legitimate uses for land." 201 Ariz., at 262, ¶21, 34 P.3d at 371. Accordingly, WildEarth's purposes for the land are consistent with the Enabling Act and the Arizona Constitution, and WildEarth was qualified to submit a bid under A.R.S. § 37–284(C).

Const. art. 10, §§ 1–11; A.R.S. §§ 37–281, –281.01). Additionally, the Enabling Act provides specifically that "[n]othing herein contained shall prevent: (1) the leasing of any of the lands referred to in this section, in such manner as the legislature of the state of Arizona may prescribe, for grazing, agricultural, commercial, and domestic purposes, for a term of ten years or less." Enabling Act § 28. The Arizona Constitution contains a similar provision. Ariz. Const. art. 10, § 3(1).

¶ 10 WildEarth argues that the statutory process for awarding leases of state trust lands violates the Enabling Act and the Arizona Constitution because it fails to ensure that the lease is awarded to the highest and best bidder. We review this question of law de novo. *Webb,* 202 Ariz. at 557, ¶ 7, 48 P.3d at 507.

¶ 11 A.R.S. § 37–284(C) directs the Land Department to award the lease to the party with the "best right and equity to the lease" and gives the Commissioner discretion to take sealed bids if the Commissioner determines that (1) none of the applications has a superior right or equity to the lease that would outweigh an offer of additional rent and (2) the taking of bids would be in the best interest of the trust.

¶ 12 A.A.C. R12–5–506 governs the manner of the Commissioner's investigation. As applicable here, the Land Department must require conflicting applicants for leases to submit "a statement of equities containing the basis of the applicant's claim to the lease." A.A.C. R12–5–506(A). An applicant may also respond to another applicant's statement of equities. A.A.C. R12–5–506(C). After investigation and review, the Land Department may request additional information from the applicants, award the lease to an applicant, or proceed to receive bids. A.A.C. R12–5–506(E). The Department is not required to order sealed bids, but sealed bids may be in the best interest of the trust when no applicant has a superior right to the lease. *See* A.R.S. § 37–284(C); A.A.C. R12–5–506; *see also Forest Guardians,* 201 Ariz. at 262, ¶ 23, 34 P.3d at 371.

¶ 13 Here, after a thorough investigation, the Land Department determined that the equities in favor of the Knights outweighed WildEarth's offer of additional rent, and that awarding the lease to the Knights would be in the best interest of the trust. Therefore, sealed bids were not required under A.R.S. § 37–284(C).

¶ 14 WildEarth asserts that the Commissioner erred by failing to open the sealed bids. WildEarth had previously avowed that it was willing to pay $10 per animal unit month ("AIM") (which was significantly higher than the appraised value bid of $2.40 per AUM the Knights had offered to pay). At the hearing before the ALJ, WildEarth did not offer the sealed bids as evidence or otherwise indicate a willingness to pay more than $10 per AUM. On appeal, WildEarth simply states that "[f]or all we know," the bid could have been much higher.

¶ 15 Having determined that the Knights had a superior right to the lease, notwithstanding WildEarth's higher initial bid, the Land Department did not err by revisiting its prior decision to require sealed bids and deciding not to open the sealed bids. Because Arizona's statutory process includes an assessment of who is willing to pay the highest rent, along with other important factors and equities, the statutory procedures followed here satisfy the highest and best bidder requirement under the Enabling Act and the Arizona Constitution. *See* A.R.S. § 37–284(C); A.A.C. R12–5–506.

## II. The Commissioner's Decision.

¶ 16 The Enabling Act imposes restrictions on the administration of state trust lands to prevent the dissipation of trust assets. *Forest Guardians,* 201 Ariz. at 260, ¶ 12, 34 P.3d at 369. The Commissioner has the same fiduciary obligations as any private trustee. *Id.* at ¶ 13. The Commissioner "is required to consider and accept the 'highest and best bidder.'" *Id.* at 262, ¶ 21, 34 P.3d at 371 (quoting Ariz. Const. art. 10, § 8). "What is highest is decided arithmetically.... What is best is a mixed question of

fact and law on which the Commissioner has considerable discretionary decision-making power." *Id.* Appellate review of this type of decision focuses on "whether the order is supported by the law and substantial evidence, and whether it is arbitrary, capricious or an abuse of the agency's discretion." *J.L.F. v. AHCCCS*, 208 Ariz. 159, 161, ¶ 10, 91 P.3d 1002, 1004 (App.2004).

■ ¶ 17 The weighing of the equities does not depend solely on the number of equities awarded to each party, but on a qualitative assessment of the equities. *See Havasu Heights Ranch & Dev. Corp. v. Desert Valley Wood Prods., Inc.*, 167 Ariz. 383, 392, 807 P.2d 1119, 1128 (App.1990) (stating that lease revenue is not the sole factor governing the Land Department's decision); *Williams v. Greene*, 95 Ariz. 378, 383–84, 390 P.2d 907, 911 (1964) (noting that many factors in addition to rental value may be weighed in assessing the benefit to the state from lease of state trust lands).

■ ¶ 18 The Commissioner's qualitative determination here was made after a thorough investigation and review. Substantial evidence supports the Commissioner's decision that the equities considered, including the more important ones, favor the Knights.[3]

¶ 19 The Land Department assigned significant weight to the Knights' ability to protect the land. The Knights had monitored the property daily, with 10 to 14 people who lived either on or within eight miles of the property. In contrast, WildEarth indicated that the property would be monitored once every two weeks by several people living between one to one and one-half hours away. The Land Department noted that the land at issue was rich in natural resources (sand, gravel, and timber); included irreplaceable Native American ruins and fossil beds; and had been the target of illegal dumping and looters. The Knights had provided daily protection against archaeological theft, off-highway vehicle traffic, natural product thefts, and illegal dumping. Thus, the ability to monitor and protect the land is significant, and sufficient evidence supported the Commissioner's conclusion that the Knights were in a better position to accomplish that goal.

¶ 20 The Land Department similarly accorded significant weight to stewardship issues and the parties' commitment to abide by lease terms and statutory provisions. The Commissioner found that the Knights had been good stewards of the property for the preceding 28 years and were better able to manage the property because they lived within the ranch unit containing the land at issue.[4] The Knights also had a history of working with land and wildlife management agencies and organizations to plan and implement conservation practices to improve State Trust rangeland. The Knights produced monitoring data indicating that rangeland conditions had been constant over the preceding 25 years and rangeland trends were stable. The Commissioner found that, in contrast, WildEarth had made inconsistent statements regarding extractive uses,[5] reimbursing for improvements, maintaining improvements,[6] and locking non-public roads,[7] and that WildEarth had mischaracterized the

---

3. The Commissioner found that six equities favored the Knights: (1) goals, objectives, and intended uses; (2) management strategy; (3) rangeland condition, health, and trend; (4) improvements; (5) protection; and (6) experience. One equity—additional rent—favored WildEarth.

4. Although both the Knights and WildEarth had successfully managed state trust lands, WildEarth had little experience managing upland areas, which comprise approximately 95 percent of this lease. The Knights had 23 years of experience applying conservation practices on the property; WildEarth had approximately 10 years of experience managing other properties in Arizona and New Mexico.

5. A.R.S. § 37-287 requires the Land Department to reserve extractive rights in its leases. WildEarth indicated in its statement of equities that it did not intend to allow extractive uses that might be permitted by the Land Department. At the ALJ hearing, however, WildEarth stated that it intended to comply with applicable laws.

6. The "improvements" equity has two components: payment to the current leaseholder and maintaining the improvements. A.R.S. § 37-322.03(A); A.A.C. R12-5-506(D)(4). In its statement of equities, WildEarth indicated that it was not willing to reimburse improvements made through state and federal grants. WildEarth also stated that it would not maintain the improve-

land's condition.[8]

¶ 21 Although WildEarth's offer to pay $10 per AUM would have resulted in $79,344 additional rent over what the Knights were willing to pay over the 10-year period, sufficient evidence supported the Commissioner's determination to award the grazing lease to the Knights based on a qualitative assessment of the equities. We conclude the Commissioner's decision to award the lease to the Knights was not arbitrary, capricious, or an abuse of discretion, and we therefore affirm.

### III. Attorney's Fees and Expert Witness Fees.

¶ 22 Because the superior court was required to interpret A.R.S. § 12–348 in its determination of an award of attorney's fees and costs, we conduct a de novo review of the award. *See Webb*, 202 Ariz. at 557, ¶ 7, 48 P.3d at 507.

¶ 23 The superior court denied the Knights' request for attorney's fees under A.R.S. § 12–348. Section 12–348 provides that "a court shall award fees and other expenses [collectively totaling $10,000 or less] to any party other than [a government entity] that prevails by an adjudication on the merits in … [a] court proceeding to review a state agency decision." A.R.S. § 12–348(A)(2), (E)(4). "Fees and other expenses" include "reasonable expenses of expert witnesses … which the court finds to be directly related to and necessary for the presentation of the party's case and reasonable and necessary attorney fees." A.R.S. § 12–348(I)(1).

¶ 24 In *Grand Canyon Trust v. Arizona Corp. Commission,* this court stated that § 12–348 "interpreted as a whole does not authorize the court to require any entity other than a governmental entity to pay a fee award to the prevailing party." 210 Ariz. 30, 40, ¶ 44, 107 P.3d 356, 366 (App.2005). This court concluded that § 12–348 did not authorize an award for a private party intervening on behalf of the state because the purpose of this fee-shifting statute only encompassed fee awards against governmental entities, not private parties. *Id.* at 39–40, ¶¶ 42–45, 107 P.3d at 365–66. Because WildEarth is not a governmental entity, the trial court properly denied the Knights' request for attorney's fees under A.R.S. § 12–348.

¶ 25 In the Knights' statement of costs,[9] they requested that the court award costs pursuant to A.R.S. § 12–348(I) in the amount of $3,238.56, including expert witness fees totaling $2,997.56 and taxable costs totaling $241.00. As noted previously, under § 12–348, fee awards are only available against governmental entities. Because § 12–348 draws no distinction between awards for "fees and other expenses," the same restriction applies to an award of expert witness fees. Accordingly, the court erred by awarding the Knights costs that included expert witness fees. *See also* A.R.S. § 12–332(A) (defining taxable costs). The cost award is therefore vacated to the extent it includes expert witness fees in the amount of $2,997.56. We affirm the remaining award of $241.00 in costs.

### CONCLUSION

¶ 26 For the foregoing reasons, we affirm the judgment and the award of costs in the

8. WildEarth claimed that the land was in need of rest and restoration and included active restoration in its management strategy. The Land Department found, however, that the riparian area of the land in question was verdant, green, and lush, and the upland area had significant standing vegetation.

9. The Knights filed two statements of costs: one before the judgment and one 19 days afterwards. For purposes of this appeal we refer to the second statement of costs.

ments that it determined "undermined the ecological integrity" of the property, which would make the land less valuable for grazing. WildEarth later indicated, however, that although it did not believe that some improvements should be reimbursed, it would abide by the Land Department's decision regarding that issue.

7. WildEarth indicated in its statement of equities that it would lock all non-public roads. At the ALJ hearing, WildEarth indicated, however, its willingness to comply with A.A.C. R12–4–110, which prohibits denying hunters legal access to state trust lands and locking gates or closing existing roads without advance permission of the Arizona Game and Fish Commission.

amount of $241.00. We vacate the award of expert witness fees.

CONCURRING: JON W. THOMPSON, Presiding Judge, and PHILIP HALL, Judge.*