IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

THE GRIFFIN FOUNDATION, *Plaintiff/Appellant*,

*v.*

ARIZONA STATE RETIREMENT SYSTEM, *Defendant/Appellee*.

No. 1 CA-CV 17-0114
FILED 5-17-2018

---

Appeal from the Superior Court in Maricopa County
No.  LC2016-000008-001
The Honorable Patricia A. Starr, Judge

**AFFIRMED**

---

COUNSEL

Jaburg & Wilk PC, Phoenix
By Kraig J. Marton, Jeffrey A. Silence
*Counsel for Plaintiff/Appellant*

Arizona State Retirement System, Phoenix
By Jothi Beljan
*Counsel for Defendant/Appellee*

---

**OPINION**

---

Presiding Judge Randall M. Howe delivered the opinion of the Court, in which Judge Kenton D. Jones and Judge James B. Morse Jr. joined.

---

**H O W E**, Judge:

¶1 The Griffin Foundation Inc. ("GFI") appeals the superior court's decision affirming the Arizona State Retirement System's ("ASRS") administrative decision holding that GFI owed past-due contributions for its employees from October 2010 to July 2015. GFI claims that during that time, its workers were not ASRS-eligible members because they were "leased" through third-party companies and therefore it did not owe any past-due contributions. A "leased employee" is an individual that is not an employee of an ASRS employer, but performs services under the employer's primary direction or control and performs those services under a leasing agreement between the employer and another person on a substantially full-time basis for at least one year. A.R.S. § 38–711(23)(f). We hold that when a business enters into an agreement to serve as a "co-employer" of those working under its direction or control, those persons cannot be considered "leased employees" within the language of A.R.S. § 38–711(23)(f). We therefore affirm the ASRS Board's decision.

## FACTS AND PROCEDURAL HISTORY

¶2 GFI operates three charter schools in Tucson. In September 2001, GFI became a participating ASRS employer by executing a supplemental retirement plan under A.R.S. §§ 15–187(C) and 38–729, which allow charter schools to enter ASRS as political subdivisions. After entering ASRS, GFI began remitting contributions to ASRS on behalf of its employees.

¶3 In 2010, GFI's CEO, Lee Griffin, met with GFI's business manager, to discuss budget issues. The business manager informed Griffin about using leased employees, a concept she first heard about while attending an ASRS workshop. The business manager solicited more information about leasing employees from ASRS. ASRS responded that leasing employees was a practice that ASRS had seen but did not "support." GFI subsequently met with businesses that it believed satisfied the requirements to serve as a leasing company. GFI contracted with Administaff[1] for such services. GFI subsequently stopped remitting contributions to ASRS on behalf of its workers, who GFI claimed were no

---

[1] Administaff subsequently changed its name to Insperity. For clarity and consistency, we refer to the company as Administaff throughout this opinion.

longer ASRS-eligible members since the workers were by then leased through Administaff.

¶4            In February 2011, the business manager informed ASRS that on October 26, 2010, GFI "contracted with Administaff to provide payroll management services, including shared employment." ASRS responded that it was not familiar with the term "shared employment" and that it needed additional information about GFI and Administaff's contractual relationship. ASRS requested information on whether GFI had its own employees or leased them through a third-party company. The following month, GFI responded that effective October 25, 2010, it no longer had employees, but leased its workers from Administaff. GFI also attached a copy of the signature page from GFI's contract with Administaff.

¶5            Five months later, ASRS assistant director Patrick Klein requested the entire contract between GFI and Administaff. After receiving the contract, ASRS asked Administaff about its contractual relationship with GFI. Administaff responded that it had a "co-employer relationship" with GFI, "under which our worksite employees are employed by both co-employers." Administaff also stated that it was a professional employer organization ("PEO") and that the Arizona Professional Employer Organization Registration Act governed its relationship with GFI.

¶6            In September 2011, citing inconsistencies between GFI's and Administaff's characterization of their relationship, ASRS informed GFI that it was liable for all contributions not withheld from October 25, 2010, to the present and attached a Contributions Not Withheld ("CNW") form for GFI to submit for each employee. GFI responded that its "workforce is employed through a leasing agency/PEO program" and that Administaff's PEO program "offers much more than the basic function of leasing employees[.]"

¶7            This led ASRS to again seek information from Administaff about whether it leased its employees to GFI. Administaff stated that it was a PEO "that co-employ[ed GFI's] employees, not a leasing agency" and that "it d[id] not lease and never has leased employees." It also explained that it entered into separate employment agreements with the employees so that they became co-employees and Administaff could provide payroll and human resource services. Finally, Administaff stated that after it became aware of GFI's possible obligations to ASRS, it offered to provide a mechanism GFI could use to satisfy those obligations but GFI declined the help. For that reason, Administaff terminated its business relationship with GFI. Accordingly, in November, ASRS informed GFI that the alleged

leasing relationship with Administaff was "unfounded" and again attached CNW forms for GFI to complete for the delinquent contributions.

¶8            In response, GFI told ASRS on November 30, 2011, that GFI had ended its relationship with Administaff and contracted with ADP TotalSource, another "leasing agency/PEO program." GFI also stated that ADP's PEO program "offers much more than the basic function of leasing employees" and that ADP "understands that [GFI] has no employees." GFI concluded that "any actions to withhold [GFI's] State Equalization funding will result in legal action."

¶9            A year later, in December 2012, GFI requested instructions from ASRS on how to rejoin ASRS before the year ended. ASRS responded that GFI would receive a letter addressing ASRS's issues with it. In ASRS's subsequent letter to GFI, it reiterated GFI's request to be reinstated as an ASRS participating employer but explained that GFI had always been an "employer partner with the ASRS prior to [its] suspension of ASRS contributions in the fall of 2010." ASRS then stated that it had never received documentation between GFI and ADP following the November 30, 2011 letter supporting GFI's claim that it leased its employees from ADP. After requesting supporting documentation, ASRS explained that its records would continue to show that GFI owed contributions, plus interest, from October 2010.

¶10           Over the next year, GFI and ASRS communicated twice. In April 2013, GFI's attorney explained to ASRS that (1) GFI was not required to make ASRS contributions while it leased its employees, (2) ASRS failed to make its position clear and therefore GFI reasonably believed that it was not required to make contributions to ASRS, and (3) GFI should be allowed to reenter ASRS. The attorney explained that GFI "requests to be re-activated into the ASRS, now, so that it can begin making ASRS contributions once again while the parties work on a solution to address the past due issue." In May, ASRS responded that GFI had been an employer partner with ASRS since September 2001. ASRS also requested documentation supporting GFI's contention that it had only leased employees and continued that "[o]ur position is and has been that [GFI] inappropriately suspended the remittance of employer and employee contributions to the ASRS in October[] 2010. [GFI] owes contributions plus interest on its delinquent ASRS contributions dating from that time."

¶11           In February 2014, GFI's attorney responded to ASRS. To show that GFI leased its employees, the attorney attached a 2013 letter from Administaff, which stated that Administaff was the employer of record for

employees on its payroll for tax purposes from October 2010 to November 2011. The attorney also attached a letter from ADP stating that ADP filed all of GFI's federal taxes since November 2011 and a copy of ADP's 2012 Wage and Tax register, which used ADP's employer identification number for employee W-2s. In June 2014, ASRS requested a copy of the contract between ADP and GFI and stated that the 2013 Administaff letter and 2012 ADP register were not confirmation that GFI did not directly employ staff. GFI's attorney sent the contract to ASRS in July and requested that ASRS acknowledge that GFI does not owe any delinquent contributions and immediately reactivate GFI into ASRS. The attorney concluded that GFI would need to provide ADP a 30-day notice and be given time for the leased employees to enroll in benefit packages with GFI as the employer.

¶12        In October, ASRS requested information from ADP's general counsel about its relationship with GFI, particularly, whether employees covered by the contract were ADP employees or GFI employees. On October 17, ASRS explained to GFI's attorney that after analyzing GFI's contract with ADP, it found that the contract was not a leasing agreement but rather a co-employment agreement. ASRS concluded that GFI remained the employer for purposes of its employees' participation in ASRS and that GFI owed delinquent contributions with interest. ASRS also stated that GFI could appeal the decision to the ASRS Director. On November 14, 2014, GFI appealed ASRS's decision to the ASRS Director. The ASRS Director affirmed the decision and found that GFI's employees had not been leased employees. In December, GFI appealed to the ASRS Board and an administrative hearing was set.

¶13        Also in December, ADP's general counsel informed ASRS that ADP was a PEO and that unlike "employee leasing companies, where the client company terminates its employees and leases them back from the employee leasing company, a PEO becomes the co-employer, while the client company continues as an employer to direct and control the employees' day-to-day activities." He further stated that when a business joins the ADP PEO relationship, the employees are co-employed by both ADP and the client. In a follow-up email to ASRS, ADP noted that it "does not lease employees and has not leased employees to [GFI]."

¶14        At the administrative hearing in May 2015, Griffin, Klein, and GFI's business manager testified to these facts. Griffin also submitted as an exhibit a chart comparing GFI's contracts with Administaff and ADP with the contractual language from an ASRS-approved leasing company, Educational Services Inc. ("ESI"), to show that the contracts and services provided were similar. Additionally, Griffin testified that in November

2012 GFI wanted to "reenter" ASRS and start withholding contributions again, but ASRS's online system for employers had not allowed GFI to sign in. Klein testified that GFI's request to "reenter" ASRS was confusing because GFI had "never not been a partner of [ASRS]. They could have made contributions and obviously should have made contributions all along." Klein also testified that ASRS recognized ESI as an employee leasing company but maintained that GFI's agreements with Administaff and ADP were not leasing agreements because, unlike ESI's agreements, the agreements referred to a co-employer relationship. He further testified that GFI's chart was flawed because "[w]hat is not on the chart is one sentence out of each contract that specifically tells the client whether or not those employees are the client's employees or belong to the contractor." An ASRS auditor testified that he audited GFI and determined that GFI owed $807,467.07 in delinquent contributions and interest from October 24, 2010, through January 9, 2015. While waiting for the Administrative Law Judge's ("ALJ") decision, GFI started making employee and employer contributions to ASRS on July 25, 2015.

¶15            In October 2015, the ALJ ruled that the "preponderance of the evidence established that written agreements between [GFI] and Administaff[] and ADP TotalSource were co-employer agreements wherein first Administaff[] and then ADP TotalSource provided services but did not lease employees to [GFI]." Accordingly, the ALJ concluded that because GFI was a co-employer, the workers were still employees of GFI and did not fall within the "leased employee" exception under A.R.S. § 38–711(23)(f). The ALJ recommended that the ASRS Board deny GFI's appeal in its entirety. At its December 2015 meeting, the ASRS Board accepted the ALJ's recommended decision.

¶16            In January 2016, GFI appealed the ASRS Board's decision to the superior court. GFI claimed that (1) its employees were leased employees, (2) ASRS violated GFI's due process rights by failing to issue a timely decision, (3) GFI should be excused from making contributions because ASRS failed to provide it with an "unlock code," and (4) its employees could waive participation in ASRS. The superior court ruled that because GFI's contracts with Administaff and ADP made GFI a co-employer—one of each employees' two employers—its employees did not qualify as leased employees. The court also concluded that the agreements were dissimilar from ESI's agreements. ESI had actually leased employees and had "craft[ed] agreements in which [ESI was] the sole employer[] of any employees[,]" while Administaff and ADP had expressly and repeatedly denied leasing employees to GFI. The court also ruled that ASRS did not violate GFI's due process rights because GFI was aware as early as

February 2011 that ASRS did not agree that GFI's employees were leased and because GFI did not establish that ASRS's final decision was unreasonably prolonged. The court further ruled that ASRS helped with the online system once it understood that GFI was unable to enter the online system. Finally, the court found that participation in ASRS was not voluntary, no exception under A.R.S. § 38–727 applied to GFI, and GFI employees could not waive participation. As such, in December 2016, the superior court affirmed the ASRS Board's December 2015 decision. GFI timely appealed.

## DISCUSSION

¶17        GFI raises several claims regarding the superior court's ruling affirming the ASRS Board's decision that GFI's workers were not leased employees but ASRS-eligible employees. "On appeal from the superior court's review of an administrative decision, we consider whether the agency action was supported by the law and substantial evidence and whether it was arbitrary, capricious or an abuse of discretion." *Callen v. Rogers*, 216 Ariz. 499, 502 ¶ 9 (2007). "In reviewing factual determinations, we will not substitute our conclusion for that of the administrative agency; instead, we review the record to determine whether substantial evidence supports the agency's decision and whether the agency exercised its discretion reasonably and with due consideration." *State ex rel. Winkleman v. Ariz. Navigable Stream Adjudication Comm'n*, 224 Ariz. 230, 238 ¶ 14 (App. 2010). But we review the administrative decision's interpretation of law de novo. *Id.* at ¶ 15.

### 1. GFI's Employees Were Not Leased Employees

¶18        GFI argues that the ASRS Board erred by finding that GFI employees were not leased employees under A.R.S. § 38–711(23)(f). We review questions of statutory interpretation de novo. *Di Giacinto v. Ariz. State Ret. Sys.*, 242 Ariz. 283, 286 ¶ 8 (App. 2017). Because GFI's employees are not leased employees as A.R.S. § 38–711(23)(f) defines the term, GFI was required to make employer contributions and withhold employee contributions.

¶19        "To determine a statute's meaning, we look first to its text. When the text is clear and unambiguous, we apply the plain meaning and our inquiry ends." *State v. Burbey*, 243 Ariz. 145, 147 ¶ 7 (2017) (internal citations omitted); *see also Wade v. Ariz. State Ret. Sys.*, 241 Ariz. 559, 561 ¶ 10 (2017) ("'If the statute is subject to only one reasonable interpretation, we apply it without further analysis.'" (quoting *Glazer v. State*, 237 Ariz. 160,

163 ¶ 12 (2015))). "We will give effect to each word or phrase and apply the 'usual and commonly understood meaning unless the legislature clearly intended a different meaning.'" *Indus. Comm'n of Ariz. v. Old Republic Ins. Co.*, 223 Ariz. 75, 77 ¶ 7 (App. 2009) (quoting *State v. Korzep*, 165 Ariz. 490, 493 (1990)).

¶20        The parties do not dispute that GFI is an ASRS employer under A.R.S. § 38–711(13) or that it must pay contributions to ASRS for any employees that meet ASRS membership requirements. Instead, the parties dispute whether the employees are ASRS-eligible members or if leased employees as GFI claims. An employee is considered a "member" for ASRS purposes when employed by a participating ASRS employer and engaged to work at least 20 weeks in a fiscal year and at least 20 hours each week. A.R.S. § 38–711(23)(a), (b). An employee is not a member-eligible employee if the employee is a "leased employee." *See* A.R.S. § 38–711(23)(f). Under that statute, a "leased employee" is an individual who:

> (i) Is not otherwise an employee of an employer.
>
> (ii) Pursuant to a leasing agreement between the employer and another person, performs services for the employer on a substantially full-time basis for at least one year.
>
> (iii) Performs services under the primary direction or control of the employer.

A.R.S. § 38–711(23)(f)(i)–(iii).

¶21        GFI's employees do not fit within this definition and are therefore not leased employees. The statute's language unambiguously provides that a leased employee cannot otherwise be an employee of an ASRS employer. Stated differently, to fit the definition, the worker cannot be an employee in any sense other than being leased from a leasing company to the leasing company's client. The specific language of GFI's contractual agreements with both Administaff and ADP established the existence of a co-employer relationship. Because GFI contracted for a co-employer relationship with both Administaff and ADP, GFI has defined itself as a co-employer of its employees and therefore cannot satisfy the statute's first prong. Moreover, the statute's second prong requires a leasing agreement between the employer and the third party. A.R.S. § 38–711(23)(f)(ii). But GFI's contractual agreements with Administaff and ADP do not mention the leasing of employees or state that the contracts are leasing agreements. Rather, each contract explicitly creates a shared

employment relationship between the PEO and GFI. Additionally, Administaff and ADP each informed ASRS that it was not a leasing company and did not lease employees to GFI. Thus, GFI's contractual agreements with Administaff and ADP fail the statute's second prong. As such, the ASRS Board and the superior court correctly determined that GFI did not lease its employees from October 24, 2010 through July 25, 2015.

¶22 Notwithstanding the statute's plain language that the leased employee must not otherwise be an employee of the employer, GFI contends that because its agreements with Administaff and ADP are not materially different from the contract created by the ASRS-approved leasing company, ESI, ASRS should have recognized that GFI leased its employees. GFI argues that Administaff, ADP, and ESI all provide similar services and that the ASRS Board and superior court failed to properly consider GFI's chart that evidenced their similarities. But this argument is meritless. Klein testified at the administrative hearing that the chart was not completely accurate because it left out an important part of each contract: the identity of the employer. Not only do the contracts between Administaff and ADP make no mention of leased employees, but representatives from both companies explained to ASRS that they did not lease employees, nor had they ever leased employees to GFI. Instead, both companies' contracts specified that both the PEO and GFI would be *co-employers*—that GFI would remain an employer. In contrast, ESI's agreement provided it would be the employee's sole employer.

¶23 GFI also asserts that because the ASRS Board and the superior court failed to consider GFI's chart, this Court should not defer to any underlying factual findings. The record does not support GFI's assertion, however. The ALJ heard testimony about GFI's chart from both Griffin and Klein. Although the ALJ did not expressly discuss GFI's chart, he did discuss that ASRS acknowledged ESI as a leasing company but found that the agreements between GFI and Administaff and ADP were co-employer agreements and did not involve leasing employees. By so finding, the ALJ implicitly rejected GFI's argument and the ASRS Board accepted the ALJ's recommended decision. Further, contrary to GFI's assertion, the superior court also addressed GFI's chart. The court acknowledged that Klein testified that GFI's chart showed the similarities between the companies but ASRS nevertheless relied on the contractual language that described GFI's relationship with Administaff and ADP. The court then specifically contrasted Administaff and ADP with ESI and concluded that ESI crafted agreements so that it was the sole employer of any employees. This shows that both the ASRS Board and the superior court understood that although GFI intended to show similarities between the companies, the evidence

actually showed that its employees were co-employed and not leased employees as A.R.S. § 38–711(23)(f) defines the term.

¶24        GFI argues that the third prong—that the leased employee performs services under the primary direction or control of the employer—necessitates that GFI have a co-employer relationship with the leasing company. This is incorrect. GFI's agreements could have provided that the "leased employees" would perform services under GFI's primary direction or control—thus satisfying the third prong—without maintaining a co-employer relationship and thereby violating prong one. *See Smith v. Saxon*, 186 Ariz. 70, 73 (App. 1996) ("Absent ascertainable public policy to the contrary, parties are free to contract as they wish."). We reject GFI's invitation to interpret the third prong to require a co-employer relationship because that would nullify the first prong, which requires that the leased employee not otherwise be an employee of an employer. We will not interpret statutes in a way that results in contradictory provisions. *See Premier Physicians Grp., PLLC v. Navarro*, 240 Ariz. 193, 195 ¶ 9 (2016) ("When possible, we seek to harmonize statutory provisions and avoid interpretations that result in contradictory provisions."). The Ninth Circuit agreed with interpreting prong three this way in *Burrey v. Pac. Gas & Elec. Co.*, 159 F.3d 388 (9th Cir. 1998). In *Burrey*, the court interpreted the "leased employee" definition in the Internal Revenue Code and held that interpreting the third prong's "primary direction or control" requirement as mandating an employer to remain an employer would render the "who is not an employee" of the employer phrase superfluous. *Id.* at 394. As such, GFI's argument is meritless.

## 2. ASRS Did Not Violate GFI's Due Process Rights

¶25        GFI argues that ASRS violated its due process rights by not issuing a final appealable decision in a timely manner. We review an alleged due process violation de novo. *Id.* "Due process is flexible and calls for such procedural protections as the particular situation demands, and the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Samiuddin v. Nothwehr*, 243 Ariz. 204, 211 ¶ 20 (2017) (internal quotations and citations omitted). A delay in obtaining a hearing does not violate due process if the hearing is not "unreasonably prolonged." *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547 (1985).

¶26        ASRS's final decision was not unreasonably prolonged. GFI provided ASRS with its Administaff contract in August 2011. After reviewing the contract, ASRS discussed the issue with Administaff. In

September 2011, ASRS informed GFI that GFI "is liable for all contributions not withheld from October 25, 2010[,] to the present," and attached CNW forms. ASRS explained that once GFI submitted the CNW form for each employee, ASRS would then issue an invoice for employer contributions and interest due. Instead of submitting a letter of appeal, *see* Arizona Administrative Code R2–8–403 (stating that a person not satisfied with an agency decision may submit a letter of appeal), GFI responded with a letter stating why it believed its employees were leased employees.

¶27        This response caused ASRS to further investigate GFI's claims with Administaff. After Administaff unequivocally denied leasing employees to GFI, ASRS sent GFI another letter in November again informing GFI that it owed contributions because its employees were not leased. GFI did not appeal from this decision but instead informed ASRS that it was now using another "leasing agency/PEO program." As such, GFI knew at the very latest by November 2011 that ASRS believed it was liable for all contributions not withheld from October 2010 onward and ASRS did not violate its due process rights.

¶28        ASRS also did not violate GFI's due process rights in deciding—three months after receiving the ADP contract—that GFI's contractual relationship with ADP was not a leasing agreement. GFI's contract with ADP began in November 2011. Although ASRS had just informed GFI that its previous contract did not establish that GFI had leased employees, GFI did not seek clarification from ASRS after its November 2011 letter. GFI did not communicate with ASRS again until December 2012. In May 2013, ASRS requested information pertaining to GFI's contract with ADP and stated that ASRS's position had always been that GFI inappropriately suspended employee and employer contributions in October 2010 and that GFI owed contributions plus interest on its delinquent ASRS contributions dating from that time. In February 2014—nine months later—GFI responded explaining why it believed its workers were leased, but did not send the ADP contract. ASRS received the contract in July 2014, and after reviewing the contract and soliciting information from ADP, issued a final appealable decision in October 2014. During this time, from October 2010 to October 2014, ASRS communicated with GFI and its alleged leasing companies to gather information about the nature of the contractual relationships to make a determination on the issue. As such, the record supports the court's ruling that no due process violation occurred.

### 3. ASRS Did Not Breach the Covenant of Good Faith and Fair Dealing

**¶29**          GFI argues that ASRS breached the implied covenant of good faith and fair dealing by not providing it with the unlock code so that it could start remitting contributions. The covenant of good faith and fair dealing is implied in every contract. *Great W. Bank v. LJC Dev., LLC*, 238 Ariz. 470, 477 ¶ 21 (App. 2015). "The essence of that duty is that neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship." *Rawlings v. Apodaca*, 151 Ariz. 149, 153 (1986). The parties agree that they entered into a contractual relationship when GFI became an ASRS employer in 2001. As such, the implied duty is included here. But the record shows that ASRS did not breach that duty.

**¶30**          Because GFI argues that ASRS did not timely provide technical assistance when it asked to "reenter" ASRS, the communications between GFI and ASRS are dispositive in determining whether ASRS breached any duty of good faith and fair dealing. GFI first communicated with ASRS about "re-instatement instructions" in December 2012. ASRS responded that GFI had been an ASRS employer since before it suspended contributions in October 2010. Then in April 2013, GFI's attorney requested that it be re-activated into ASRS so that it could begin making contributions. The following month, ASRS responded that GFI had been an ASRS employer since September 2001 when it executed a supplemental retirement plan under A.R.S. §§ 15–187(C) and 38–729 and that the agreement between ASRS and GFI was irrevocable. GFI did not respond to the June 2013 letter until February 2014.

**¶31**          In its February 2014 letter to ASRS, GFI discussed the leased employee issue but concluded that "[GFI] is now eager to enroll in the ASRS and begin making contributions once this matter is resolved." ASRS responded in June but did not mention GFI's enrollment request. GFI's July letter again requested that it be re-activated and stated that once ASRS approved the re-activation, GFI would need to provide a 30-day notice to ADP and be given enough time to allow leased employees to enroll in benefit services with GFI as the employer. Three months later, ASRS issued its final appealable decision holding that GFI did not lease its employees.

**¶32**          At the administrative hearing, Klein testified that GFI had not been locked out of ASRS but merely needed to update its password information because it had gone too long without using the online system. He also testified that GFI's request to reenter ASRS was confusing because

it had always been an ASRS employer and that ASRS did not understand that GFI was asking for login assistance. He finally testified that ASRS had learned that GFI needed technical online assistance only at the settlement conference before the hearing and that once ASRS learned that GFI had login difficulties, it provided login instructions. The ALJ found Klein's testimony credible, and the superior court found that once ASRS knew GFI was unable to enter the online system, it provided assistance. GFI's communications with ASRS support these findings. GFI requested to be reactivated or reentered into ASRS but did not request technical assistance in accessing the online system. Thus, the record contains sufficient evidence that ASRS did not breach any duty of good faith and fair dealing.

### 4. ASRS Members May Not Waive Participation

¶33        GFI next argues that even if its employees are not leased employees for purposes of A.R.S. § 38–711(23)(f), its employees should be allowed to waive contributions during the time that GFI failed to withhold contributions. Section 38–727(A)(1) states in pertinent part that all employees of political subdivisions are subject to the ASRS statutes "except that membership is not mandatory" in limited exceptions. Because GFI entered ASRS as a political subdivision, its member-eligible employees must participate in ASRS unless one of the limited exceptions in A.R.S. § 38–727 applies. GFI does not argue, however, that its employees fall under any of the enumerated exceptions. Instead, it argues that the employees can nevertheless waive their right to contributions. But under A.R.S. § 38–736(A), "[m]ember contributions are required as a condition of employment and *shall* be made by payroll deductions. Member contributions *shall* begin simultaneously with membership in ASRS." (Emphasis added). As such, the legislature has clearly established when membership in ASRS is not mandatory, and GFI's employees do not fall within any exception; therefore, the employees may not waive contributions.

### CONCLUSION

¶34        For the foregoing reasons, we affirm.

